# REICH *v.* COLLINS, REVENUE COMMISSIONER OF GEORGIA, ET AL.

No. 93–908.   Argued October 11, 1994—Decided December 6, 1994

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Carlton M. Henson* argued the cause and filed briefs for petitioner.

*Warren R. Calvert,* Senior Assistant Attorney General of Georgia, argued the cause for respondents. With him on the briefs were *Michael J. Bowers,* Attorney General, and *Daniel M. Formby,* Senior Assistant Attorney General.*

---

*Briefs of *amici curiae* urging reversal were filed for the Committee on State Taxation by *Kendall L. Houghton* and *William D. Peltz;* for James B. Beam Distilling Co. by *Morton Siegel* and *John L. Taylor, Jr.;* for the National Association of Retired Federal Employees et al. by *Michael J. Kator;* and for the Tax Executives Institute, Inc., by *Timothy J. McCormally* and *Mary L. Fahey.*

Briefs of *amici curiae* urging affirmance were filed for the State of Alabama et al. by *James S. Gilmore III,* Attorney General of Virginia, *David E. Anderson,* Chief Deputy Attorney General, *Catherine C. Hammond,* Deputy Attorney General, *Roger L. Chaffe* and *Gregory E. Lucyk,* Senior Assistant Attorneys General, and *Cynthia W. Comer* and *Barbara H. Vann,* Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *James H. Evans* of Alabama, *Grant Woods* of Arizona, *Robert Butterworth* of Florida, *Robert A. Marks* of Hawaii, *Roland W. Burris* of Illinois, *Pamela Carter* of Indiana, *Bonnie J. Campbell* of Iowa, *Robert T. Stephan* of Kansas, *Richard P. Ieyoub* of Louisiana, *Hubert H. Humphrey III* of Minnesota, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Jeffrey R. Howard* of New Hampshire, *Deborah T. Poritz* of New Jersey, *Heidi Heitkamp* of North Dakota, *Susan B. Loving* of Oklahoma, *Ernest D. Preate, Jr.,* of Pennsylvania, *Charles W. Burson* of Tennessee, *Dan Morales* of Texas, *Jan Graham* of Utah, *Jeffrey L. Amestoy* of Vermont, *Christine O. Gregoire* of Washington, and *James E. Doyle* of Wisconsin; and for the National Governors' Association et al. by *Richard Ruda* and *Charles Rothfeld.*

*Michael F. Easley,* Attorney General, *Edwin M. Speas, Jr.,* Senior Deputy Attorney General, *Thomas F. Moffitt* and *Norma S. Harrell,* Special

JUSTICE O'CONNOR delivered the opinion of the Court.

In a long line of cases, this Court has established that due process requires a "clear and certain" remedy for taxes collected in violation of federal law. *Atchison, T. & S. F. R. Co.* v. *O'Connor*, 223 U. S. 280, 285 (1912) (Holmes, J.). A State has the flexibility to provide that remedy before the disputed taxes are paid (predeprivation), after they are paid (postdeprivation), or both. But what it may not do, and what Georgia did here, is hold out what plainly appears to be a "clear and certain" postdeprivation remedy and then declare, only after the disputed taxes have been paid, that no such remedy exists.

## I

For many years, numerous States, including Georgia, exempted from state personal income tax retirement benefits paid by the State, but not retirement benefits paid by the Federal Government (or any other employer). In March 1989, this Court held that such a tax scheme violates the constitutional intergovernmental tax immunity doctrine, which dates back to *McCulloch* v. *Maryland*, 4 Wheat. 316 (1819), and has been generally codified at 4 U. S. C. § 111. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803 (1989).

In the aftermath of *Davis*, most of these States, Georgia included, repealed their special tax exemptions for state retirees, but few offered federal retirees any refunds for the unconstitutional taxes they had paid in the years before *Davis* was decided. Not surprisingly, a great deal of litigation ensued in an effort to force States to provide refunds. The instant suit is part of that litigation.

In April 1990, Reich, a retired federal military officer, sued Georgia in Georgia state court, seeking a refund for the tax years 1980 and after. The principal legal basis for Reich's

Deputy Attorneys General, and *Marilyn R. Mudge*, Assistant Attorney General, filed a brief for the State of North Carolina as *amicus curiae*.

lawsuit was Georgia's tax refund statute, which provides: "A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state, whether paid voluntarily or involuntarily . . . ." Ga. Code Ann. § 48–2–35(a) (Supp. 1994).

The Georgia trial court first decided that, because of § 48–2–35's statute of limitations, Reich's refund request was limited to the tax years 1985 and after. Even as to these later tax years, however, the trial court refused to grant a refund, and the Georgia Supreme Court affirmed. See *Reich* v. *Collins*, 262 Ga. 625, 422 S. E. 2d 846 (1992) *(Reich I)*. The Georgia high court explained that it was construing the refund statute not to apply to "the situation where the law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional or otherwise invalid." *Id.*, at 628–629, 422 S. E. 2d, at 849.

Reich then petitioned the Georgia Supreme Court for reconsideration of its decision on the grounds that even if the Georgia tax refund statute does not require a refund, federal due process does—due process, that is, as interpreted by *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation,* 496 U. S. 18 (1990), and the long line of cases upon which *McKesson* depends. See *id.*, at 32–36, citing *Iowa-Des Moines Nat. Bank* v. *Bennett,* 284 U. S. 239 (1931); *Montana Nat. Bank of Billings* v. *Yellowstone County,* 276 U. S. 499 (1928); *Carpenter* v. *Shaw,* 280 U. S. 363 (1930); *Ward* v. *Board of Commr's of Love Cty.,* 253 U. S. 17 (1920); *Atchison, T. & S. F. R. Co.* v. *O'Connor, supra;* see generally Fallon & Meltzer, New Law, Non-Retroactivity, and Constitutional Remedies, 104 Harv. L. Rev. 1733, 1824–1830 (1991). As we said, these cases stand for the proposition that "a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment," *Carpenter, supra,* at 369,

the sovereign immunity States traditionally enjoy in their own courts notwithstanding. (We should note that the sovereign immunity States enjoy in *federal* court, under the Eleventh Amendment, does generally bar tax refund claims from being brought in that forum. See *Ford Motor Co.* v. *Department of Treasury of Ind.*, 323 U. S. 459 (1945).)

Reich's petition for reconsideration in light of *McKesson* was denied. He then petitioned for certiorari. While the petition was pending, we decided *Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86 (1993), which relied on *McKesson* in circumstances similar to this case. Accordingly, we remanded Reich's case to the Georgia Supreme Court for further consideration in light of *Harper.* See *Reich* v. *Collins*, 509 U. S. 918 (1993).

On remand, the Georgia Supreme Court focused on the portion of *Harper* explaining that, under *McKesson*, a State is free to provide its "clear and certain" remedy in an exclusively predeprivation manner. "[A] meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing," we said, is "'a procedural safeguard [against unlawful deprivations] sufficient by itself to satisfy the Due Process Clause.'" See *Harper, supra,* at 101, quoting *McKesson, supra,* at 38, n. 21. The court then reviewed Georgia's predeprivation procedures, found them "ample," and denied Reich's refund claim. *Reich* v. *Collins*, 263 Ga. 602, 604, 437 S. E. 2d 320, 322 (1993).

Reich again petitioned for certiorari, and we granted the writ, 510 U. S. 1109 (1994), to consider whether it was proper for the Georgia Supreme Court to deny Reich relief on the basis of Georgia's predeprivation remedies.

## II

The Georgia Supreme Court is no doubt right that, under *McKesson*, Georgia has the flexibility to maintain an exclusively predeprivation remedial scheme, so long as that

scheme is "clear and certain." Due process, we should add, also allows the State to maintain an exclusively postdeprivation regime, see, *e. g., Bob Jones Univ.* v. *Simon,* 416 U. S. 725, 746–748 (1974), or a hybrid regime. A State is free as well to reconfigure its remedial scheme over time, to fit its changing needs. Such choices are generally a matter only of state law.

But what a State may *not* do, and what Georgia did here, is to reconfigure its scheme, unfairly, in *mid-course*—to "bait and switch," as some have described it. Specifically, in the mid-1980's, Georgia held out what plainly appeared to be a "clear and certain" postdeprivation remedy, in the form of its tax refund statute, and then declared, only after Reich and others had paid the disputed taxes, that no such remedy exists. In this regard, the Georgia Supreme Court's reliance on Georgia's predeprivation procedures was entirely beside the point (and thus error), because even assuming the constitutional adequacy of these procedures—an issue on which we express no view—no reasonable taxpayer would have thought that they represented, in light of the apparent applicability of the refund statute, the *exclusive* remedy for unlawful taxes. See generally Rakowski, *Harper* and Its Aftermath, 1 Fla. Tax Rev. 445, 474 (1993).

Nor can there be any question that, during the 1980's, prior to *Reich I,* Georgia did appear to hold out a "clear and certain" postdeprivation remedy. To recall, the Georgia refund statute says that the State *"shall"* refund *"any and all* taxes or fees which are determined to have been erroneously or *illegally assessed* and collected from [a taxpayer] under the laws of this state, whether paid voluntarily or involuntarily . . . ." Ga. Code Ann. § 48–2–35(a) (Supp. 1994) (emphasis added). In our view, the average taxpayer reading this language would think it obvious that state taxes assessed in violation of federal law are "illegally assessed" taxes. Certainly the United States Court of Appeals for the Eleventh Circuit thought this conclusion was obvious when,

in a 1986 case, it denied federal court relief to taxpayers raising claims similar to Reich's, in part because it thought Georgia's refund statute applied to the claims. See *Waldron* v. *Collins*, 788 F. 2d 736, 738, cert. denied, 479 U. S. 884 (1986).

Respondents, moreover, do not point to any Georgia Supreme Court cases prior to *Reich I* that put any limiting construction on the statute's sweeping language; indeed, the cases we have found are all entirely consistent with that language's apparent breadth. See, *e. g.*, *Georgia* v. *Private Truck Council of America, Inc.*, 258 Ga. 531, 371 S. E. 2d 378 (1988); *Henderson* v. *Carter*, 229 Ga. 876, 195 S. E. 2d 4 (1972); *Parke, Davis & Co.* v. *Cook*, 198 Ga. 457, 31 S. E. 2d 728 (1944); *Wright* v. *Forrester*, 192 Ga. 864, 16 S. E. 2d 873 (1941). Even apart from the statute and the cases, we find it significant that, for obvious reasons, States ordinarily *prefer* that taxpayers pursue only postdeprivation remedies, *i. e.*, that taxpayers "pay first, litigate later." This preference is significant in that it would seem especially unfair to penalize taxpayers who may have ignored the possibility of pursuing predeprivation remedies out of respect for that preference.

In many ways, then, this case bears a remarkable resemblance to *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449 (1958) (Harlan, J.). There, an Alabama trial court held the National Association for the Advancement of Colored People in contempt for failing to comply with a discovery order to produce its membership lists, and the Alabama Supreme Court denied review of the constitutionality of the contempt judgment on the grounds that the organization failed earlier to pursue a mandamus action to quash the underlying discovery order. The Court found that the Alabama high court's refusal to review the contempt judgment was in error. Prior Alabama law, the Court said, showed "unambiguous[ly]" that judicial review of contempt judgments had consistently been available, the existence of man-

damus notwithstanding. *Id.*, at 456. For good measure, the Court also looked at prior Alabama law on mandamus and found nothing "suggest[ing] that mandamus is the *exclusive* remedy" in this situation. *Id.*, at 457 (emphasis in original). Justice Harlan thus concluded: "Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *Id.*, at 457–458, citing *Brinkerhoff-Faris Trust & Sav. Co.* v. *Hill*, 281 U. S. 673 (1930) (due process violated when state court denied injunction against collection of unlawful taxes on the basis of taxpayer's failure to pursue administrative remedies, where State's prior "settled" law made clear that no such administrative remedies existed); see generally Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1137–1139 (1986).

Finally, Georgia contends that Reich had no idea (before *Davis*) that the taxes he was paying throughout the 1980's might be unconstitutional. Even assuming Reich had no idea, however, we are not sure we understand the argument. If the argument is that Reich would not have taken advantage of the State's predeprivation remedies no matter how adequate they were (and thus has no standing to complain of those remedies), the argument is beside the point for the same reason that we said that the Georgia Supreme Court's reliance on those remedies was beside the point: Reich was entitled to pursue what appeared to be a "clear and certain" postdeprivation remedy, regardless of the State's predeprivation remedies. Alternatively, if the argument is that Reich needed to have known of the unconstitutionality of his taxes in order to pursue the State's postdeprivation remedy, the argument is wrong. It is wrong because Georgia's refund statute has a relatively lengthy statute of limitations period, and, at least until this case, see *Reich I*, 262 Ga., at 629, 422 S. E. 2d, at 849, contained no contemporaneous pro-

test requirement. Under such a regime, taxpayers need not have taken any steps to learn of the possible unconstitutionality of their taxes at the time they paid them. Accordingly, they may not now be put in any worse position for having failed to take such steps.

For the reasons stated, the judgment is reversed and the case is remanded for the provision of "'meaningful backward-looking relief,'" *Harper*, 509 U. S., at 101, quoting *McKesson*, 496 U. S., at 31, consistent with due process and our *McKesson* line of cases. See, *e. g., Carpenter* v. *Shaw*, 280 U. S. 363 (1930).

<div align="right">

*It is so ordered.*