Argued and submitted December 8; resubmitted December 19, 1994, judgment of the
Tax Court affirmed April 6, reconsideration denied May 23, 1995

# William T. ATKINS,
## *Appellant,*

*and*

## Susan A. ATKINS,
### *Plaintiff,*

*v.*

# DEPARTMENT OF REVENUE,
## State of Oregon,
### *Respondent.*

## (OTC 3469; SC S41438)

894 P2d 449

Carl N. Byers, Judge.

William T. Atkins argued the cause and filed the briefs *pro se*.

Ted Barbera, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

In this direct appeal from the Oregon Tax Court, taxpayers challenge a judgment that denied their claim for tax refunds of certain state income taxes. Those taxes, paid on their federal retirement income in 1986 and 1987, were assessed in violation of the constitutional doctrine of intergovernmental tax immunity.[1] The Tax Court held that, under ORS 305.765,[2] taxpayers are entitled to a refund of taxes assessed and paid on their federal retirement income in or after 1988, but not before that year. *Atkins v. Dept. of Rev.*, 13 OTR 65, 67-68 (1994).

Taxpayers seek a reversal of the judgment of the Tax Court. Specifically, they seek a refund, not under ORS 305.765, but rather under Oregon's omnibus tax refund statute, ORS 305.270.[3] However, this court in *Ragsdale v.*

---

[1] During the tax years in question, Oregon impermissibly taxed the retirement income of federal retirees while it exempted state retirees from paying tax on their state retirement income. In 1989, the Supreme Court of the United States held that a similar tax scheme violated the doctrine of intergovernmental tax immunity. *See Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989) (holding Michigan tax scheme unconstitutional). Oregon's tax scheme later was challenged in *Ragsdale v. Dept. of Rev.*, 312 Or 529, 823 P2d 971 (1992), in which this court held:

"Because federal retirement benefits were subject only to a limited exemption from state tax while state retirement benefits were completely exempt, ORS 316.680(1)(c) and (d) (1987) impermissibly discriminated against employees of the federal government in violation of the constitutional doctrine of intergovernmental tax immunity."

312 Or at 542 (citation omitted).

[2] ORS 305.765 provides:

"Whenever, in a proceeding involving the validity of any law whereby taxes assessed or imposed have been collected and received by the state, acting through any department or agency thereof, and paid into the State Treasury, if the court of last resort holds the law or any part thereof invalid, and the time limited for any further proceeding to sustain the validity of the law, or the part thereof affected, has expired, and if there is no other statute authorizing refund thereof, all taxes collected and paid under the law or part thereof invalidated, in or after the year in which the action attacking the validity of the same was instituted, shall be refunded and repaid in the manner provided in ORS 305.770 to 305.785."

[3] ORS 305.270 provides in part:

"(1) Except as provided in ORS 118.100, if the amount of the tax shown as due on a report or return originally filed with the department with respect to a tax imposed under ORS chapter * * * 316 * * * or collected pursuant to ORS 305.620, or as corrected by the department, is less than the amount theretofore paid, or if a person files a claim for refund of any tax paid to the department

*Dept. of Rev.*, 312 Or 529, 535-37, 823 P2d 971 (1992), held that ORS 305.765 governs refunds of taxes collected under laws later adjudged invalid. Under ORS 305.765, taxpayers are entitled to a refund of taxes "collected and paid under the law or part thereof invalidated, in or after the year in which the action attacking the validity of the same was instituted." *See also* ORS 305.780.[4] The "action attacking the validity" of the tax scheme at issue was "instituted" in 1989. *Ragsdale*, 312 Or at 539. Therefore, under *Ragsdale*, taxpayers are entitled to a refund only of taxes invalidly assessed and collected "in or after" 1988. *Ibid.* The Tax Court provided that precise remedy to taxpayers. For the reasons that follow, we affirm that decision.

## FACTS

Taxpayers are husband and wife. William Atkins, a federal retiree, became an Oregon resident in 1986. Susan Atkins remained a California resident during the years relevant to this appeal. In 1987, William filed an Oregon tax return disclosing his federal retirement income received in

---

under such laws within the period specified in subsection (2) of this section, any excess tax paid shall be refunded by the department with interest as provided in this section and ORS 314.415.

"(2) * * * The claim shall be filed within the period specified in ORS 314.415(1)(b) for taxes imposed under ORS chapter[] * * * 316 * * *, or collected pursuant to ORS 305.620 (except where any applicable ordinance specifies another period) * * *."

ORS 314.415(1)(b) provides:

"No refund shall be allowed or made after three years from the time the return was filed, or two years from the time the tax or a portion thereof was paid, whichever period expires the later, unless before the expiration of such period a claim for refund is filed by the taxpayer in compliance with ORS 305.270, nor shall a refund claimed on an original return be allowed or made in any case unless the return is filed within three years of the due date, excluding extensions, of the return in respect to which the tax might have been credited. If a refund is disallowed for the tax year during which excess tax was paid for any reason set forth in this paragraph, the excess shall not be allowed as a credit against any tax occurring on a return filed for a subsequent year. If the tax owed after offsets for all amounts owed the state is less than $5, no refund shall be made."

[4] ORS 305.780 provides:

"Nothing contained in ORS 305.770 to 305.785 authorizes the refunding of any tax collected and paid under an invalidated tax law, or invalidated part thereof, where the tax as provided in such law became due and payable in any year prior to the year in which the suit or action seeking the invalidation of the law or part thereof was instituted."

1986. In 1988, taxpayers filed a joint, nonresident return on their 1987 income. The 1987 return reported only one-half of William Atkins' federal retirement income on the theory that, under California's community property law, one-half of that retirement income belonged to his wife. In 1991, after the Supreme Court of the United States issued its opinion in *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989), but before this court's ruling in *Ragsdale*, the Atkins' 1987, 1988, and 1989 tax returns were audited in Oregon and California. The Oregon Department of Revenue (the Department) noted that William Atkins' federal retirement income was not California "community property" and should have been reported in full on his Oregon tax returns. On March 24, 1991, taxpayers filed an amended 1987 Oregon tax return, which claimed that, under *Davis*, none of William's federal retirement income received in 1987 was subject to tax in Oregon. The Department audited the amended return and, in January of 1992, issued a notice of assessment of additional tax for the excluded federal retirement income. Taxpayers voluntarily paid the assessment to avoid accrual of interest and then appealed the assessment to the Department. The Department denied taxpayers' claim for refund on July 9, 1993. Taxpayers appealed to the Oregon Tax Court, which held that the taxes included on taxpayers' 1987 return (on one-half of their federal retirement income) could not be refunded. The additional taxes, paid in response to the 1992 assessment by the Department, were refunded. Taxpayers sought direct review of the Tax Court judgment in this court.

## DISCUSSION

Taxpayers make two different claims for refund. Their dispute with the Department always has concerned the refund of taxes reported in their 1987 joint tax return. That was the dispute litigated below at the Department and in the Tax Court. In this court, taxpayers now claim, for what appears to be the first time, that they are entitled to a refund of taxes paid by William Atkins for *1986*. That claim is not properly before this court, and we do not address it.[5] The sole

---

[5] By our estimation, nearly eight years have passed since taxpayers filed their 1986 tax return, and never before have they asserted this claim for refund. On review of taxpayers' claims, this court is not a court of first impression. Taxpayers cannot

issue properly before us is whether taxpayers are entitled to a refund of taxes paid on the portion of William Atkins' federal retirement income reported as income in 1987. We now turn to that issue.

Taxpayers argue that this court's decision in *Ragsdale* fails to provide them with the full retroactive application of *Davis* required by *Harper v. Virginia Dept. of Taxation*, 509 US ___, 113 S Ct 2510, 125 L Ed 2d 74 (1993) (pertaining to a Virginia tax scheme). Taxpayers also assert that Oregon's tax refund statutes, as construed by this court, deny them a "clear and certain remedy" that will meet federal due process requirements. *See McKesson Corp v. Florida Alcohol & Tobacco Div.*, 496 US 18, 110 S Ct 2238, 110 L Ed 2d 17 (1990) (setting out federal due process requirements in this context). Taxpayers also argue that, in *Ragsdale*, this court impermissibly construed ORS 305.765 to deny them the benefit of the three-year statute of limitations for refunds of "excess" taxes that is provided in ORS 305.270 and 314.415(1)(b). *See Reich v. Collins*, 513 US ___, 115 S Ct 547, 130 L Ed 2d 454 (1994) (holding that State of Georgia could not hold out what plainly appeared to be a clear and certain post-deprivation remedy and then declare, only after disputed taxes were paid, that no such remedy existed).

We shall discuss taxpayers' arguments in three parts. In part one, we discuss whether Oregon statutes provide a "clear and certain" remedy for taxes paid pursuant to a law later held invalid and, if so, what that remedy requires. In part two, we assess taxpayers' argument that *Davis* and *Harper* require full retroactive payment of all taxes. In part three, we focus on the due process requirements of *McKesson* and *Reich*, to determine whether ORS 305.765 and our holding in *Ragsdale* violate those requirements.

## I. OREGON'S REMEDY

■ Oregon provides, by statute, a special form of tax refund for taxes assessed and collected pursuant to a tax law that is later invalidated. That statute has particular time limits. The impetus for that refund remedy came in 1930,

---

avoid the exhaustion of their administrative remedies merely because they are before this court on another matter. *See Nutbrown v. Munn*, 311 Or 328, 811 P2d 131 (1991) (administrative remedies must be exhausted).

when Oregon's "intangibles tax" was declared unconstitutional by this court. *See Redfield et al. v. Fisher et al.*, 135 Or 180, 204, 292 P 813 (1930), *reh den*, 135 Or 205, 295 P 461 (1931) (so holding). In 1931, the Oregon legislature enacted what is now ORS 305.765 through 305.785. In *Ragsdale*, 312 Or at 536-37, this court interpreted ORS 305.765 and held that — in the absence of a more specific statute relating to the challenge, invalidation, and refund of taxes paid pursuant to a law later held invalid — the legislature intended ORS 305.765 to apply. The context of the statute, including related statutes enacted by the same legislature, demonstrated that legislative intent. *Ibid.*; *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (discussing methodology for interpretation of statutes). Because taxpayers later challenge that interpretation on federal due process grounds, see part III, *post*, we explain, once again, that interpretation here.

In 1929, just before the great stock market crash, Oregon enacted two new tax provisions. The first provision, artfully titled the "Property Tax Relief Act of 1929," established Oregon's first income tax. Or Laws 1929, ch 448. The second provision taxed "intangibles," including gross interest or dividends, other than stock dividends, derived from "bonds, notes, claims and demands, secured or unsecured * * *, all shares of stock in corporations and any and all other evidences of indebtedness." Or Laws 1929, ch 429, § 1. Both tax acts included provisions for refunds of "excess" taxes paid, Or Laws 1929, ch 448, § 21 (income tax); Or Laws 1929, ch 429, § 10 (intangibles tax), and both authorized the State Tax Commission to use limited amounts of the generated tax revenue for that purpose.

The "intangibles tax" almost immediately was challenged and was struck down in *Redfield*, in which this court held that the intangibles tax violated the Fourteenth Amendment to the Constitution of the United States. 135 Or at 204. Within a matter of weeks after this court announced its *Redfield* decision, the State Tax Commission requested two opinions from the Oregon Attorney General. The first request asked "whether refunds [could] be made by any of the present state officials either out of funds which have been receipted

into the general fund or which have been held by the Treasurer unreceipted, and, if so, by whom, and, if not, what legal steps [were] required in order to authorize the making of refunds." 15 Op Atty Gen 34 (1930-32). The second request asked whether the *Redfield* decision had struck down the refund provision of the intangible tax act or whether, instead, that provision could be used to refund the taxes collected unconstitutionally. *Id.* at 37.

The opinions given by the Attorney General, in response to those two questions, set the stage for the legislative action that followed. The first opinion distinguished between the refund of a tax later held invalid and the refund of an "overpayment" of a tax. In the Attorney General's view, a refund of a tax, voluntarily paid pursuant to a law later held invalid, could not be made under then-existing Oregon law without specific authorization.

> " '[T]axes voluntarily paid cannot be recovered, and, in the absence of statute, * * * the payment of illegal taxes "under protest" does not make the payment involuntary so as to authorize the taxpayer to recover the taxes so paid.' "

*Id.* at 35 (quoting *Johnson v. Crook County*, 53 Or 329, 334-35, 100 P 294 (1909), and cases cited therein). *See also Moffitt v. Salem*, 81 Or 686, 691, 160 P 1152 (1916) (stating rule); 10 Op Atty Gen 167 (1920-22) (stating rule and noting cases). The Attorney General concluded that taxes collected under the "intangibles tax" before it was held invalid could not be refunded without specific legislative authorization.

The second opinion of the Attorney General advised the State Tax Commission that the limited funds provided by Oregon Laws 1929, chapter 429, section 15, for refunds of "excess" taxes paid were not available to make refunds of taxes assessed and collected under mistake of law. Instead, those funds were "to be used in making refunds of amounts paid by taxpayers in excess of the taxes they were legally required to pay. Such excess was not paid under a mistake of law, but constitute[d] money paid upon condition that the amount thereof in excess of the taxes due should be refunded as soon as ascertained. Under such circumstances neither the Tax Commission nor the State of Oregon obtained any title thereto."

15 Op Atty Gen at 38. The Attorney General again advised that the existing refund statute, and the limited fund provided for refunds of "excess taxes paid," did not authorize the refund of taxes paid "under a mistake of law." *Id.* at 37-38. This, he advised, would require legislative authorization. That authorization soon followed.

In 1931, the legislature enacted three statutes relevant to this appeal. The first was an omnibus refund provision, which authorized the State Tax Commission to draw directly from the general fund to pay refunds of taxes "in excess of those due or legally assessable." It provided as follows:

"Section 1. Whenever it shall appear to the state tax commission from the audit of the returns required by any revenue measure, or otherwise, that the taxes, penalty or interest paid by a taxpayer or any part thereof, are in excess of those due or legally assessable, the commission is hereby authorized to refund to any taxpayer who has paid the tax, all taxes, interest or penalties in excess of those due or legally assessable, with interest at the rate of 6 per cent per annum from and after 30 days from the date of filing claim for refund.

"Section 2. That in lieu of the procedure provided in certain of the revenue acts for the retaining of a working balance by the commission from which refunds may be made, the commission is hereby authorized, in accordance with the requirement of the secretary of state, to pay over all funds received under any of the revenue acts, to the state treasurer, and to write refund checks upon the state treasurer for refunds authorized by law."

Or Laws 1931, ch 229. That statute forms the basis for our present omnibus refund statute, ORS 305.270.

Later, during the same legislative session, the legislature enacted two companion statutes that specifically authorized, and limited, refunds of taxes collected pursuant to the "intangibles tax" and any future tax that was held to be invalid. Oregon Laws 1931, chapter 338, dealt specifically with the "intangibles tax" refund. It appropriated an amount to be used for repayment of the tax and directed the Tax Commission to prepare a report of all taxpayers who had paid it. The statute then directed the Secretary of State to audit the State Tax Commission's report before forwarding it to the

State Treasurer for payment. If and when the Supreme Court of the United States denied the state's petition for certiorari, or affirmed the judgment of this court, the Treasurer was authorized to pay the refunds. This elaborate refund scheme was repeated in Oregon Laws 1931, chapter 337, which also provided in part:

> "Whenever, in any proceeding involving the validity of any law whereby taxes assessed or imposed have been collected and received by the state, acting through any department or agency thereof, and paid into the state treasury, the court of last resort shall have held said law or any part thereof invalid, and the time limited for any further proceeding to sustain the validity of the law, or the part thereof affected, shall have expired, and in case there be no other statute authorizing refund thereof, all taxes collected and paid under the law or part thereof invalidated, in or after the year in which the action attacking the validity of the same was instituted, shall be refunded and repaid in the manner herein provided."

That latter provision now is codified as ORS 305.765.[6]

Having provided the historical context of the relevant statutes, we now turn to resolution of taxpayers' arguments. Taxpayers rely on the phrase "and if there is no other statute authorizing refund thereof," in ORS 305.765, to argue that Oregon's current omnibus tax refund statute, with its longer statute of limitations, should apply. We do not agree. As this court noted in *Ragsdale*, the intent of the legislature is clear from the fact that the legislature found it necessary to enact all the above-mentioned statutes in the same legislative session. If the legislature had intended the 1931 omnibus refund statute to apply to *all* tax refunds, including refunds of taxes paid pursuant to laws later held to be invalid, it would not have enacted Oregon Laws 1931, chapter 337 or 338. A construction of the 1931 omnibus tax refund statute to make that law applicable to *all* refunds also

---

[6] In the 1953 revision and recodification of Oregon's statutes, the phrase "and in case there be no other statute authorizing refund thereof" was changed to "and if there is no other statute authorizing refund thereof." *Compare* OCLA 110-859 (1931) *with* (*former*) ORS 306.280 (1953). The change in wording became law by authority of ORS 174.510 (1953) (adopting revised statutes as presented in enrolled House Bill No. 2). We find nothing in that stylistic change suggesting a change in the meaning of the phrase.

would have contradicted the Attorney General's contemporaneous opinion that "refunds of amounts paid by taxpayers in excess of the taxes they were legally required to pay" were *not the same* as refunds of taxes paid pursuant to a law later held invalid.[7] We explained in *Ragsdale* that, if the 1931 provision for *future* refunds of taxes paid pursuant to laws later held invalid, Oregon Laws 1931, chapter 337, were to have *any* effect at the time it was enacted, the legislature could not have intended it to be overshadowed by the earlier enacted omnibus refund statute of that same year. It has long been the rule of this court that " 'statutes on the same subject * * * particularly if passed at the same [legislative] session, should receive a construction, if possible, which will give effect to each of them.' " *Ragsdale*, 312 Or at 537 (quoting *Daly v. Horsefly Irrigation District*, 143 Or 441, 446, 21 P2d 787 (1933)).

It is clear from the context of ORS 305.765, as illustrated above, that the phrase on which taxpayers rely originally referred to the *more specific* refund provisions in Oregon Laws 1931, chapter 338, and not the omnibus refund statute enacted as Oregon Laws 1931, chapter 229. We once again hold that, consistent with the clear intent of the legislature, the more specific provisions of ORS 305.765, rather than the more general provision of ORS 305.270, control eligibility for refunds of the kind sought by taxpayers here.

■      Having reaffirmed our earlier analysis in *Ragsdale*, we now turn to the requirements and limitations imposed by ORS 305.765. To receive a refund under that statute, the invalid state law first must be "attacked" in an "action" and held "invalid" by this court. Once the "time limited for any further proceeding to sustain the validity of the law * * * has expired," refunds can be made. The refund, however, is limited to "all taxes collected and paid under the law or part thereof invalidated, *in or after the year in which the action attacking the validity of the same was instituted*." ORS 305.765 (emphasis supplied). That limitation is further asserted in ORS 305.780 ("Nothing contained in ORS

---

[7] We do not hold that the legislative intent of the omnibus tax refund statute passed in 1931 is dependent on the Attorney General's opinion addressing refunds. We merely note that the state's chief legal officer used the quoted phrase to refer to refunds of *excess* taxes, and not refunds of *invalidated* taxes.

305.770 to 305.785 authorizes the refund [of invalidated taxes] due and payable in any year prior to the year in which the suit or action seeking the invalidation of the law or part thereof was instituted"). We turn now to taxpayers' argument that, the Oregon refund statutes notwithstanding, full retroactive payment of *all* invalidly collected taxes is required by *Davis* or *Harper*.

## II. RETROACTIVE PAYMENT OF INVALID TAXES

In *Davis*, the Supreme Court of the United States did not discuss the retroactivity question. It merely held: "The State having conceded that a refund is appropriate in these circumstances, to the extent *appellant* has paid taxes pursuant to this invalid tax scheme, *he* is entitled to a refund." 489 US at 817, 109 S Ct at 1509, 103 L Ed 2d at 906 (citations omitted; emphasis supplied). Retroactivity was not discussed specifically until *Harper*.

In *Harper*, the Supreme Court of Virginia had refused to apply the *Davis* decision to a case pending in Virginia at the time *Davis* was decided. The Supreme Court of the United States reversed the judgment of the Supreme Court of Virginia and remanded the case for the determination of a proper remedy. The Court held that, when the Court applies a federal rule of law to the parties before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper*, 509 US at ___, 113 S Ct at 2517, 125 L Ed 2d at 86. It further held:

> "Virginia 'is free to choose which form of relief it will provide, so long as that relief satisfies the minimum federal requirements we have outlined.' [*McKesson*, 496 US] at 51-52, 110 L Ed 2d 17, 110 S Ct 2238. State law may provide relief beyond the demands of federal due process, id., at 52, n 36, 110 L Ed 2d 17, 110 S Ct 2238, but under no circumstances may it confine petitioners to a lesser remedy, see id., at 44-51, 110 L Ed 2d 17, 110 S Ct 2238."

509 US at ___, 113 S Ct at 2520, 125 L Ed 2d at 89.

Neither *Davis* nor *Harper* required full retroactive payment of all invalidly collected taxes. Both merely required retroactive application of the *Davis* decision to all cases *pending* in state courts at the time that *Davis* was decided — a circumstance not present here. *Harper* further required that the state's chosen remedy meet the minimum standards of federal due process that are set out in *McKesson*. We turn now to those requirements.

### III. THE DUE PROCESS REQUIREMENTS OF *McKESSON* AND *REICH*

In *McKesson*, 496 US at 37-39, 110 S Ct at 2250-51, 110 L Ed 2d at 36-37, the Supreme Court of the United States described the minimum due process requirements in tax cases as follows:

> "[W]hereas '[w]e have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest," ' it is well established that a State need not provide predeprivation process for the exaction of taxes. Allowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult. To protect government's exceedingly strong interest in financial stability in this context, we have long held that a State may employ various financial sanctions and summary remedies, such as distress sales, in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment.
>
> "* * * To satisfy the requirements of the Due Process Clause, therefore, [in a post-deprivation refund action] the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy,' for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one."

(Emphasis in original; citations and footnotes omitted.)

There is no question that Oregon's statutes encourage payment of a tax before litigation of a claim for relief. *See* ORS 305.419 (tax, interest, and all penalties assessed shall be

paid on or before the filing of a complaint with the regular division of the Tax Court). Taxpayers do not challenge the sufficiency of the post-deprivation process afforded to them. They claim, rather, that ORS 305.765 does not provide a "clear and certain remedy" such that "the opportunity to contest the tax is a meaningful one." *McKesson*, 496 US at 39, 110 S Ct at 2251, 110 L Ed 2d at 37.

In *McKesson*, the Supreme Court of the United States spoke directly to the State of Florida's ability to limit its refund remedy and engage in sound fiscal planning. It held:

> "A State's freedom to impose various procedural requirements on actions for postdeprivation relief sufficiently meets this concern with respect to future cases. The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint; execute any refunds on a reasonable installment basis; enforce relatively short statutes of limitations applicable to such actions; refrain from collecting taxes pursuant to a scheme that has been declared invalid by a court or other competent tribunal pending further review of such declaration on appeal; and/or place challenged tax payments into an escrow account or employ other accounting devices such that the State can predict with greater accuracy the availability of undisputed treasury funds. The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax."

496 US at 45, 110 S Ct at 2254-55, 110 L Ed 2d at 41.

Oregon, through enactment of ORS 305.765, created such "procedural protections" to ensure stable fiscal planning long ago. As we have already set out, ORS 305.765 requires an early protest before a refund of taxes collected under an invalid law is available. That requirement, in *McKesson* terms, acts as a "relatively short statute[] of limitations." 496 US at 45, 110 S Ct at 2254, 110 L Ed 2d at 41. If an action attacking the validity of the tax is not instituted within the year following its assessment (*viz.*, the year in which it is due and payable in this case), no refund may be made. Furthermore, the "action" requirement in ORS

305.765 permits the state to prepare for the possibility that refunds of taxes, collected under the challenged tax scheme, might be necessary. That is exactly what the Supreme Court of the United States contemplated when it suggested that a state "place challenged tax payments into an escrow account or employ other accounting devices such that the State can predict with greater accuracy the availability of undisputed treasury funds." *McKesson*, 496 US at 45, 100 S Ct at 2255, 110 L Ed 2d at 41.

It follows that, contrary to taxpayers' claims, the *McKesson* court considered, and approved, limitations on refunds of taxes paid pursuant to a law later held invalid. ORS 305.765 established such limitations in 1931. Consistent with that statute, Oregon provided refunds to taxpayers taxed under the invalid tax scheme back to 1988, the tax year preceding the year in which the initial tax challenge was made. Taxpayers now seek a refund of taxes paid two years before any attack or challenge was made. That claim is barred by the limitations that Oregon has placed on such refunds.

We turn now to taxpayers' final argument on review. Taxpayers argue that the Supreme Court's decision in *Reich* requires this court to apply ORS 305.270, the general tax refund statute, rather than ORS 305.765, to their claim. We do not agree. The *Reich* case involved the State of Georgia, a state that did not make special provision for refunds of taxes paid pursuant to a law later held invalid. Instead, Georgia had only one refund statute, Ga Code Ann § 48-2-35(a) (Supp 1994), which provided in part:

> "A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest on the amount of the taxes or fees at the rate of 9 percent per annum from the date of payment of the tax or fee to the commissioner."

In the *Reich* case, the Georgia Supreme Court had held, without further explanation, that the statute

> "contemplate[d] the situation where a taxing authority erroneously or illegally assesses and collects a tax under a valid law. It [did] not address the situation where the law under

which the taxes are assessed and collected is itself subsequently declared to be unconstitutional or otherwise invalid."

*Reich v. Collins*, 262 Ga 625, 628-29, 422 SE2d 846, 849 (1992). Accordingly, the Georgia court denied the taxpayers all post-deprivation remedies.

The Supreme Court of the United States took a different view. It held that, although a state's remedial scheme was "generally a matter only of state law," a state could not "reconfigure its scheme, unfairly, in *midcourse* — to 'bait and switch,' as some have described it." Accordingly, it reversed the Georgia court's decision. *Reich*, 513 US at ____, 115 S Ct at 550, 130 L Ed 2d at 459 (emphasis in original).

Unlike Georgia, Oregon has not "reconfigured" its scheme or changed it in midcourse. The applicable statute has been the law of this state since 1931. Neither has this court introduced "novel" procedural requirements to "thwart review," such as those that the Supreme Court of the United States found to have been created in *Reich*. *Reich*, 513 US at ____, 115 S Ct at 551, 130 L Ed 2d at 460. To the contrary, neither the controlling statute, nor our method of statutory construction, is "novel." We do not read *Reich* to require this court to abandon its longstanding rules of statutory construction in order to provide taxpayers a refund to which they would not normally be entitled. That *would be* novel.

Taxpayers have not demonstrated any reason for this court to overrule *Ragsdale*, and we adhere to it. Under that decision, taxpayers are not entitled to a refund of taxes invalidly collected before the 1988 tax year. Thus, taxpayers' claim for refund of taxes paid in 1987 must fail.

The judgment of the Tax Court is affirmed.