NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

AMERICAN HERITAGE WINDOW         )
FASHIONS, LLC,                   )
                                 )
          Appellant,             )
                                 )
v.                               )          Case No. 2D14-3630
                                 )
DEPARTMENT OF REVENUE,           )
                                 )
          Appellee.              )
_____)

Opinion filed May 6, 2016.

Appeal from the Department of Revenue.

Joseph C. Moffa, Gerald J. Donnini, II, and
James F. McAuley of Moffa, Gainor, &
Sutton, P.A., Ft. Lauderdale, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kelly M. Behmke,
Assistant Attorney General, Tallahassee,
for Appellee.


SALARIO, Judge.

          This is an appeal from the Florida Department of Revenue's dismissal of a

petition to review the denial of a tax refund.  Section 72.011(2)(a), Florida Statutes

(2009), provides that an action to contest the assessment of certain taxes, including

those at issue here, must be brought within sixty days of the date the assessment becomes final and also that an action to contest the denial of a refund of tax payments must be brought within sixty days of the date the denial becomes final. American Heritage Window Fashions, LLC filed an application for a tax refund and, after the Department denied it, petitioned for review of that denial pursuant to chapter 120, Florida Statutes (2014). The Department entered a final order dismissing the petition because it concluded that although styled as a timely petition seeking review of a refund denial, the petition actually was an untimely effort to contest a tax assessment made in 2010. We agree and affirm.

I.

American Heritage sells and installs plantation shutters. After conducting an audit of American Heritage's sales tax remittances, the Department concluded that American Heritage failed to collect and remit taxes on sales to wholesale customers as required by chapter 212, Florida Statutes.[1] On March 29, 2010, the Department served American Heritage with a notice of proposed assessment requiring it to pay a tax deficiency and interest in the total amount of $220,330.79. American Heritage takes the view that the tax deficiency was improperly assessed because the sales taxes were to be collected by its wholesale customers from ultimate consumers of the plantation shutters. The underlying issue is whether the Department was right to conclude that the shutters were fixtures within the meaning of a regulation governing tax on sales with respect to real property improvements, a determination that "depends upon review of all

---

[1]The tax years at issue included 2005 through 2008.

of the facts and circumstances of each situation." See Fla. Admin. Code R. 12A-1.051(2)(c)(3).

The assessment notice informed American Heritage that it could file an informal protest of the assessment no later than May 28, 2010. See Fla. Admin. Code R. 12-6.003(1)(b) (providing a right to file an informal protest within sixty calendar days of a notice of proposed assessment). If an informal protest was not timely filed, the notice explained, the assessment would become final. The notice also informed American Heritage that it could seek either administrative review under chapter 120 or judicial review by filing a petition or complaint, as appropriate, no later than sixty days after the assessment became final. See § 72.011(1)(a), (2)(a) (providing right to administrative or judicial review and establishing time limit). With respect to the right to seek administrative or judicial review, the notice explained that "Florida Statutes mandate this [sixty-day] time limit and the Department cannot extend it."

American Heritage did not file an informal protest, administrative petition, or civil complaint, and the Department began efforts to collect the assessment in late 2010. On May 10, 2011, the Department ordered a bank at which American Heritage maintained an account to freeze all funds in that account until the assessment was satisfied. American Heritage later agreed to release the funds in the bank account to the Department, and the bank then transferred those funds to the Department. The Department received $7507.58 from the bank on April 1, 2013, of which $6525.95 was applied to the sales tax deficiency, roughly three percent of the assessed sum.

On July 10, 2013, American Heritage requested that the Department refund the $6525.95 on the grounds that it was an audit overpayment. The Department

denied the request on August 26, 2013, and American Heritage filed a written protest on September 25, 2013. The protest stated that American Heritage sought "to appeal the Notice of Proposed Assessment" rendered in March 2010 because it "believe[d] this audit assessment to be in error." The protest argued at length that the plantation shutters American Heritage sells are not fixtures and thus that American Heritage was not required to collect tax on sales to wholesale customers. In a detailed written decision, the Department rejected American Heritage's protest on the merits. That action made final the Department's denial of American Heritage's refund application.

On April 7, 2014, American Heritage filed a petition for a chapter 120 hearing through which it sought to have the Division of Administrative Hearings (DOAH) review the Department's denial of the refund request. The petition stated that "[t]his is a controversy whereby the Department has denied a refund . . . by assessing tax on transactions in which no tax is due" and that American Heritage sought a refund "for the portion of the audit assessment that it paid."[2]

The Department responded by filing a motion asking DOAH to relinquish jurisdiction. The Department argued that the petition was a challenge to the Department's 2010 assessment of a sales tax deficiency and was, for that reason, time-barred under section 72.011(2)(a) because it was not brought within sixty days of the date the assessment became final. American Heritage responded that its petition was

_____

[2]Although the petition is not clear, presumably American Heritage sought review of agency action as described in sections 120.569(2)(a) and 120.57. The nature of the relationship of the proceedings between the Department and DOAH is neither established by the record and the briefs nor raised as an issue by the parties. Accordingly, we do not address any issues that may be associated with the procedural mechanisms employed at the agency level.

- 4 -

not an action to contest the assessment of a tax, but rather was a challenge to a refund denial and, as such, was permitted by section 72.011(2)(a) to be brought within sixty days of the date the denial became final. DOAH granted the motion and relinquished jurisdiction to the Department, which later entered a final order dismissing American Heritage's petition on grounds that it lacked jurisdiction.

II.

On appeal, American Heritage argues that its chapter 120 petition timely commenced proceedings to review the Department's denial of its refund application. It observes that a taxpayer is authorized by statute to seek a tax refund when it has overpaid a tax, paid a tax when no tax is due, or paid a tax in error. See § 215.26, Fla. Stat. (2014). It characterizes the transfer from its bank account to the Department as all three of those things and argues that its petition sought review of the Department's denial of its application within sixty days of the date the denial became final. American Heritage thus contends that the Department misinterpreted section 72.011(2)(a) by characterizing the petition as a challenge to the 2010 assessment and dismissing it as untimely.

There is no dispute about the underlying facts, and American Heritage's argument is one of statutory construction. Because we may set aside an agency's final order where the agency interprets the law wrongly and the right interpretation compels a particular result, see § 120.68(7)(d), we consider de novo the issue of whether the agency misinterpreted section 72.011 when it dismissed the petition. See M.H. v. Dep't of Children & Family Servs., 977 So. 2d 755, 759 (Fla. 2d DCA 2008).

Our consideration begins with the text of the statute.  In relevant part, section 72.011 provides as follows:

> (1)(a)  A taxpayer may contest the legality of any assessment or denial of refund of tax, fee, surcharge, permit, interest, or penalty provided for under . . . chapter 212 . . . by filing an action in circuit court; or, alternatively, the taxpayer may file a petition under the applicable provisions of chapter 120 . . . .
>
> . . . .
>
> (2)(a)  <u>An action may not be brought to contest an assessment of any tax</u>, interest, or penalty assessed under a section or chapter specified in subsection (1) <u>more than 60 days after the assessment becomes final.  An action may not be brought to contest a denial of refund of any tax</u>, interest, or penalty paid under a section or chapter specified in subsection (1) <u>more than 60 days after the date the denial becomes final</u>.
>
> . . . .
>
> (5)  <u>The requirements of subsections (1), (2), and (3) are jurisdictional</u>.

(Emphasis added.)  Taken together, these subsections create a sixty-day jurisdictional time limit within which an action brought to contest an assessment of a tax listed in subsection (1)(a) or an action brought to contest a refund denial with respect to such a tax must be commenced.  In each instance, the time period runs from the date the Department's action—the original assessment or the refund denial—becomes final.

Because the taxes here are governed by a chapter listed in subsection (1)(a) of the statute, any action brought to contest an assessment or denial regarding such a tax is subject to the jurisdictional time limits of subsection (2)(a).[3]  The issue we

---

[3]We note that subsection (1)(a) authorizes the bringing of "an action in the circuit court" or "a petition under the applicable provisions of chapter 120," while the

must decide is whether American Heritage's petition was brought to contest a tax assessment, in which case it is time-barred because it was brought more than sixty days after the 2010 assessment became final, or was brought to contest a refund denial, in which case it is timely because it was brought within sixty days of the date the Department's denial of the refund application became final. We conclude that American Heritage's petition was brought to contest the assessment and is therefore untimely.

There is no textual indication that the statutory phrase "brought to contest" carries a specialized meaning, and we should therefore interpret it as the words would be understood in ordinary, everyday discourse. See Donato v. Am. Tel. & Tel. Co., 767 So. 2d 1146, 1154 (Fla. 2000) ("[W]ords or phrases in a statute must be construed in accordance with their common and ordinary meaning."). Where an infinitive phrase (here, "to contest") is used as an adverb modifying a verb (here, "brought"), the infinitive phrase is most often understood as conveying the purpose or reason for the action expressed by the verb. See Kushell v. Dep't of Nat. Res., 870 A.2d 186, 194 (Md. 2005) ("Where an infinitive phrase is used as an adverb, speakers of English normally will understand it to convey purpose."); see also Mark Lester & Larry Beason, The McGraw-Hill Handbook of English Grammar and Usage, 107 (2d ed. 2013) (explaining that "[a]dverb infinitive phrases . . . answer adverb questions (especially why questions)"). Describing an "action brought to contest an assessment" is thus akin to

---

time limits proscribed by subsection (2)(a) apply to "an action" to contest an assessment or refund denial. The parties here have assumed that "a petition" under subsection (1)(a) is "an action" within the meaning of subsection (2)(a). We express no opinion on that issue.

describing a "truck used to carry equipment" or a "book read to pass time."  The infinitive phrase in each example expresses a reason for the action the verb connotes: "To carry" means "in order to carry," "to pass" means "in order to pass," and "to contest" means "in order to contest."  See Lester & Beason, supra at 107 ("A particularly easy and reliable test for adverb infinitive phrases is to put in order in front of the infinitive. . . .").  In ordinary discourse, then, an action is "brought to contest an assessment" of a tax when it is brought in order to contest that assessment—i.e., for the purpose of disputing that assessment.

In this case, we know that American Heritage's petition was brought for the purpose of disputing the 2010 assessment because American Heritage has been explicit about that purpose.  When it protested the Department's initial denial of its refund application, American Heritage explained that its purpose was "to appeal the Notice of Proposed Assessment" because it believed that the deficiency assessment was made in error and that "no balance should be outstanding as a liability."  The petition confirmed this purpose by stating that the parties' dispute was over the Department "assessing tax on transactions in which no tax is due."  American Heritage's response to the Department's motion to relinquish jurisdiction explained that it needed the refund proceedings to challenge the validity of the assessment because it "mistakenly missed the assessment appeals deadlines."  In American Heritage's own words, the assessment was the raison d'être for both its application for a refund and, later, for its petition under chapter 120.

Moreover, it cannot reasonably be said that the purpose or reason for the petition was to contest the denial of a refund.  American Heritage paid three percent of a

final tax assessment, which it did with funds from a bank account the Department had frozen. It then pursued a refund on grounds that any payment of the assessment was refundable and explicitly sought a determination that the assessment was invalid in its entirety. On the face of it, the refund application and subsequent petition were not brought in order to secure the return of the three percent American Heritage paid; they were brought to obtain a determination absolving it of any liability to pay the ninety-seven percent that it did not. Put differently, although the petition takes the form of one seeking review of refund denial, it has been brought for the purpose of contesting the underlying tax assessment. American Heritage's argument that its petition should be regarded as having been brought to contest a refund denial as distinguished from a tax assessment is thus inconsistent with the plain meaning of the phrase "brought to contest" as applied to its operation on its object, in this case a refund denial. Labeling an action brought to contest an assessment as one brought to contest a refund denial does not change its purpose as an action brought to contest an assessment.

American Heritage's argument that we should interpret the statute differently, if accepted, would place section 72.011(2)(a)'s separate time limitations for assessment and refund contests in conflict. See Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So. 2d 891, 898 (Fla. 2002) ("[R]elated statutory provisions must be read together to achieve a consistent whole, and . . . '[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.' " (second alteration in the original) (citations omitted) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992))); B.R. v. State, 145 So. 3d 196, 198 (Fla. 2d DCA 2014) (same). Interpreting

section 72.011(2)(a) to allow a taxpayer to mount an untimely action to contest a tax assessment through a petition to review a refund denial under circumstances like those here would render the statute's sixty-day limitation on actions brought to contest tax assessments meaningless. The sixty-day period would not serve as a limitation on assessment contests at all; the taxpayer could always wait months or years after the assessment becomes final—perhaps until the Department takes coercive action to obtain payment of the assessment—pay a small fraction of the assessed tax, seek a refund on grounds that the tax was unlawfully assessed, and then attempt to invalidate the entire assessment by seeking administrative or judicial review of any denial of that refund within sixty days of the date the denial becomes final. Read as American Heritage urges, the limitation on assessment contests means only that a taxpayer may not file a document formally called a "Petition to Contest Tax Assessment" more than sixty days after the assessment becomes final, but it may in substance directly and explicitly contest the assessment through a refund application without having paid the tax in any material amount.

This type of outcome would be problematic with any statute—the legislature means for statutes it adopts to be effective—but it is especially so here. In this statute, the legislature has not merely specified a time limit within which actions brought to contest tax assessments must be brought; it has stated that the time limit is jurisdictional. § 72.011(5). This is the language of a jurisdictional statute of nonclaim. See Markham v. Neptune Hollywood Beach Club, 527 So. 2d 814, 816 (Fla. 1988) (holding that analogous language in section 194.171, Florida Statutes, setting time limitations for actions contesting property tax assessments was "a jurisdictional statute

of nonclaim").  Such a statute "automatically bars untimely claims and is not subject to waiver or extension," May v. Ill. Nat'l Ins. Co., 771 So. 2d 1143, 1157 (Fla. 2000), and operates as a divestiture of jurisdiction to hear a claim, Taylor v. City of Lake Worth, 964 So. 2d 243, 244 (Fla. 4th DCA 2007).  In section 72.011(2)(a), then, the legislature established an absolute rule that assessment contests must be brought within sixty days of finality.  Interpreting the separate statutory provision governing contests of refund denials to permit untimely challenges to tax assessments places the provision of the statute setting a jurisdictional time limit for refund contests in conflict with the provision of the statute setting a jurisdictional time limit for assessment contests.  In contrast, interpreting the statute as we have allows both jurisdictional time periods in section 72.011(2)(a) to have effect and to function harmoniously.[4]

Relying on Newsweek, Inc. v. Florida Department of Revenue, 522 U.S. 442 (1998), American Heritage asserts, for the first time on appeal, that denying it a remedy after it has paid a portion of the tax assessed denies it procedural due process.  This unpreserved argument was not presented to DOAH or the Department, and

[4]We disagree with American Heritage that the First District's decision in Pogge v. Department of Revenue, 703 So. 2d 523 (Fla. 1st DCA 1997), requires a different outcome.  Pogge interpreted an earlier version of the statute that established a sixty-day time limit for assessment challenges and provided that the statute was "not applicable to actions for refund of taxes previously paid."  Id. at 526.  In holding that the circuit court had jurisdiction over a civil action contesting the denial of a refund of taxes that should never have been assessed, the First District relied heavily on that language.  Unlike Pogge, we now interpret a statute that sets a time limit for actions brought to contest an assessment and a separate time limit for actions brought to contest a refund denial, and we conclude, as set forth in this opinion, that this action does not contest the denial of a refund and only contests matters related to the original assessment.

American Heritage cannot raise it for the first time on appeal.[5]  See Fowler v. Dep't of Health, Bd. of Optometry, 821 So. 2d 1246, 1248 (Fla. 1st DCA 2002).

Even if the argument had been preserved, however, Newsweek does not apply here.  In that case, Newsweek paid sales tax on magazine sales as they came due.  Newsweek, 522 U.S. at 443.  After it paid the taxes, our supreme court rendered a decision holding that a statute that exempted newspapers, but not magazines, from paying sales tax violated the First Amendment.  Id. at 442.  Based on that decision, Newsweek applied for a refund, which the Department denied.  Id. at 443.  Judicial relief through an action seeking review was filed.  Ultimately, the First District held that Newsweek had a prospective, prepayment remedy to challenge the constitutionality—it could have filed a lawsuit and deposited the disputed tax in the court registry, see § 72.011(1), (3)—and that due process therefore did not require that it also have a retrospective, postpayment refund action.  Id. (citing Newsweek, Inc. v. Dep't of Revenue, 689 So. 2d 361, 363-64 (Fla. 1st DCA 1997)).

The United States Supreme Court vacated the judgment because Newsweek "reasonably relied on the apparent availability of a postpayment refund when paying the tax."  Id. at 445.  It explained that "[u]nder Florida law, there was a longstanding practice of permitting taxpayers to seek refunds . . . for taxes paid under an unconstitutional statute."  Id. at 444.  Indeed, "[a]t Florida's urging, federal courts have dismissed taxpayer challenges, including constitutional challenges, because [the refund statute] appeared to provide an adequate postpayment remedy for refunds."  Id.

_____

[5]American Heritage does not argue fundamental error, and we do not see it in the circumstances of this case.

The Court held that Florida could constitutionally maintain "an exclusively predeprivation remedial scheme" but that it would deny Newsweek due process to "hold[] out what plainly appears to be a 'clear and certain' postdeprivation remedy and then declare, only after the disputed taxes have been paid, that no such remedy exists." Id. (quoting Reich v. Collins, 513 U.S. 106, 110-11 (1994)).

In sum, the First District in Newsweek went astray by holding that any legal challenge to the validity of a taxing statute had to be brought prepayment or was lost, when Florida law in fact provided a clear and certain postpayment remedy for such claims in circumstances where the tax scheme was subsequently determined to be unconstitutional. This case does not present that kind of problem. To begin with, it does not involve a tax paid under a statute that was deemed invalid only after the taxpayer paid it. It involves a taxpayer's assertion that the Department incorrectly determined on the facts that a particular transaction was subject to tax, which was known to or knowable by American Heritage at the time the tax was assessed. American Heritage thus had notice of the basis for a dispute about that tax prior to payment in a way that a taxpayer who pays a tax under a statute that is later determined to be invalid does not.

Moreover, it cannot be said that Florida held out a clear and certain postpayment remedy for the kind of dispute American Heritage seeks to have decided. The assessment dispute in this case was subject to an explicit statutory limitation that it may not be brought "more than 60 days after the date the assessment becomes final." § 72.011(2)(a). The Department notified American Heritage of this time limitation when it assessed the tax and explained that the deadline was statutory and not subject to

- 13 -

extension.  Unlike the bait and switch that concerned the Court in <u>Newsweek</u>, 522 U.S. at 444, the statute and the notice provided to American Heritage here are inconsistent with any expectation of a clear and certain postpayment remedy for claims brought to contest tax assessments.

Finally, this does not appear to be a case in which American Heritage "reasonably relied on the apparent availability of a postpayment refund when paying the tax."  <u>Id.</u> at 445.  Newsweek paid its taxes in full and sought a refund after the tax was deemed unconstitutional.  American Heritage paid only three percent of the tax and then made a refund application for the stated purpose of appealing the assessment after it had missed the deadline for doing so before the tax came due.  In other words, American Heritage understood that any action to contest the assessment was time-barred and paid a small part of the tax to attempt a backdoor review of the assessment after the time-bar by seeking review of the denial of the token amount of refund paid.  That looks like an expectation that a postpayment remedy would not be available rather than reliance on the availability of such a remedy.

III.

American Heritage's petition under chapter 120 was brought for the purpose of contesting a deficiency assessment more than sixty days after it became final.  The Department correctly determined that the challenge was untimely, and American Heritage's assertion that it was denied procedural due process is both unpreserved and without merit.  The Department's final order is affirmed.

Affirmed.

SILBERMAN and MORRIS, JJ., Concur.