[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12547

_____

IN RE: MOSAIC MANAGEMENT GROUP, INC.,

Debtor.

_____

UNITED STATES TRUSTEE REGION 21,

Plaintiff-Appellee
Cross-Appellant,

*versus*

BAST AMRON LLP,

Defendant-Appellant
Cross-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 16-bk-20833-EPK

—————————————

Before JORDAN, BRASHER, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

In this appeal after remand from the Supreme Court, we address the appropriate remedy for the constitutional violation identified in *Siegel v. Fitzgerald*, 596 U.S. __, 142 S. Ct. 1770 (2022). We received supplemental briefing and held another oral argument on the remedy issues.

I.

In 2008, Debtors Mosaic Management Group, Inc., Mosaic Alternative Assets, Ltd., and Paladin Settlements, Inc. filed for Chapter 11 bankruptcy in the Southern District of Florida, a "UST district" in which the U.S. Trustee program operates. In June 2017, the bankruptcy court confirmed a joint Chapter 11 plan, under which most of the Debtors' assets were transferred to an Investment Trust managed by an Investment Trustee.

In September 2019, the Investment Trustee filed a motion requesting a determination of the Investment Trust's quarterly fee liability and seeking a reimbursement of its overpayment of those fees. Among other arguments, the Investment Trustee argued that Congress violated constitutional tax and bankruptcy uniformity requirements when it passed the Bankruptcy Judgeship Act of 2017 (the "2017 Amendment"), which temporarily increased fees for the largest debtors in Chapter 11 cases in UST districts. The

purpose of the 2017 Amendment was to address a dwindling U.S. Trustee program budget resulting from declining bankruptcy filings and to fund bankruptcy judgeships. Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, sec. 1004(a), § 1930(a)(6), 131 Stat. 1224, 1232; H.R. Rep. No. 115-130, at 7–9 (2017), *as reprinted in* 2017 U.S.C.C.A.N. 154, 159. From 2018 through 2022, if the U.S. Trustee System Fund had a balance of less than $200 million in the prior fiscal year, the 2017 Amendment provided that the "quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000." Pub. L. No. 115-72, sec. 1004(a), § 1930(a)(6), 131 Stat. at 1232. Otherwise, the existing fee schedule remained. In contrast to this amendment to 11 U.S.C. § 1930(a)(6) governing fees in the UST districts, the 2017 Amendment did not explicitly amend 11 U.S.C. § 1930(a)(7) which governs fees in the six Bankruptcy Administrator ("BA districts") in Alabama and North Carolina. Section 1930(a)(7) provided that "the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection." 11 U.S.C. § 1930(a)(7). Thus, the Act did not explicitly require a comparable increase of the fees in the six BA districts that are not part of the U.S. Trustee program. The Judicial Conference, which oversees the BA districts, did not impose in the BA districts the increased quarterly fee provision until September 2018 and then only for cases filed on or after October 1, 2018.

Although the bankruptcy court denied most of the motion, it held that the 2017 Amendment created a partial uniformity

problem because 2% of the fees collected in the UST districts were to be paid to the general U.S. Treasury fund, which would offset the cost of a temporary bankruptcy judgeship in a BA district. The court ordered the U.S. Trustee to credit the Investment Trustee a sum equal to 2% of the quarterly fees paid since January 1, 2018. The court rejected the Investment Trustee's other challenges to the increased quarterly fees.

The parties[1] received authorization to file a direct appeal to this Court and we issued an opinion affirming in part and reversing in part. *In re: Mosaic Mgmt. Grp., Inc.*, 22 F.4th 1291 (11th Cir. 2022), *vacated sub nom. Bast Amron LLP v. United States Trustee Region 21*, 142 S. Ct. 2862 (2022). We held that the 2017 Amendment properly applied to a case that was pending and confirmed prior to the Act's enactment because Congress clearly expressed its intent to this effect. We also held that the 2017 Amendment does not violate substantive due process and is not a tax subject to the Tax Uniformity Clause. Finally, we held that the 2017 Amendment presents no violation of the Bankruptcy Uniformity Clause.

Subsequently, the Supreme Court addressed the Amendment and held that it violated the uniformity requirement of the

---

[1] The law firm Bast Amron was substituted for the Investment Trustee before we issued our first opinion in this case. Bast Amron thus stands in the shoes of the Investment Trustee, who in turn stood in the shoes of the Debtors in this bankruptcy case. To avoid confusion with the U.S. Trustee, the appellee in this case, we will hereafter refer to the appellant parties to this appeal as the Debtors, which also better describes their capacity in this bankruptcy case.

20-12547                Opinion of the Court                5

Bankruptcy Clause, abrogating our opinion to the extent it held that there had been no violation of the Bankruptcy Uniformity Clause. *Siegel v. Fitzgerald*, 596 U.S. __, 142 S. Ct. 1770 (2022). However, the Court reserved decision on the issue of the appropriate remedy, commenting that the parties raised "a host of legal and administrative concerns with each of the remedies proposed, including the practicality, feasibility, and equities of each proposal; their costs; and potential waivers by nonobjecting debtors." 142 S. Ct. at 1783. Several days later, the Supreme Court granted the Debtors' petition for writ of certiorari in this case, vacated our judgment, and remanded for further consideration in light of *Siegel*. *Bast Amron LLP v. U.S. Tr. Region 21*, 142 S. Ct. 2862 (2022).

## II.

The issue before us is the appropriate remedy for the constitutional violation the Supreme Court found in *Siegel*. The Debtors in this case—being debtors in a U.S. Trustee district—have been required to pay higher fees than a comparable debtor in one of the six BA districts in Alabama or North Carolina. We now know, from the Supreme Court decision in *Siegel*, that the differential treatment of comparable debtors constituted a violation of the uniformity requirement of the Bankruptcy Clause. Debtors in this case seek a refund of the differential between what they have paid and the lesser amount that a comparable debtor in one of the BA districts paid. That differential persisted during 2018 and thereafter until

6                    Opinion of the Court                    20-12547

Congress, becoming aware of the problem, enacted the 2020 Act[2] which presumably ended the different treatment.  Thus, the issue before us is whether the Debtors are entitled to such a refund, and if not, what remedy is appropriate.[3]

### III.

When a statute unconstitutionally confers a benefit on one class over another, courts have two options.  First, they can declare the statute "a nullity and order that its benefits not extend to the class that the legislature intended to benefit" *Sessions v. Morales-Santana*, 582 U.S. 47, 72 (2017) (quoting *Califano v. Westcott*, 443 U.S. 76, 89 (1979)).  As a second option, the court "may extend the coverage of the statute to include those who are aggrieved by exclusion." *Id.* Generally, extension of the benefit, rather than its nullification, is the proper course. *Id.* at 74.  Because the statute at issue in this case imposes a burden instead of providing a benefit, the two options in this case are: 1) nullify the burden (the fee increase); or 2) extend the burden (the fee increase) to those initially excluded (the BA districts).  Although the right for equal treatment is rooted in the Constitution, the remedy for its violation is not found there. *Id.* at 73.

---

[2] The Bankruptcy Administration Improvement Act of 2020 ("2020 Act") was enacted by Congress, effective January 12, 2021.  Pub. L. 116-325, 134 Stat. 5086.  It effectively mandated that the fee increases that had been enacted in the 2017 Amendment shall apply not only in the U.S. Trustee districts, but also in the BA districts. *Id.* sec. 3(d)(2).

[3] At oral argument the government expressly disavowed sovereign immunity, so we need not address that matter.

It is well established that in formulating the remedy for constitutional violations like this one, courts should be guided by congressional intent. *Id.* at 73 ("The choice between these outcomes is governed by the legislature's intent . . . "); *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 426–427 (2010) ("On finding unlawful discrimination, . . . courts may attempt, within the bounds of their institutional competence, to implement what the legislature would have willed had it been apprised of the constitutional infirmity."); *Ayotte v. Planned Parenthood of N. New Eng.,* 546 U.S. 320, 330 (2006) ("the touchstone for any decision about remedy is legislative intent"); *United States v. Booker*, 543 U.S. 220, 246 (2005) ("We answer the remedial question by looking to legislative intent."); *Heckler v. Mathews*, 465 U.S. 728, 739 n.5 (1984) ("the court should not, of course, 'use its remedial powers to circumvent the intent of the legislature'") (quoting *Westcott*, 443 U.S. at 94 (Powell, J., concurring in part)); *Welsh v. United States*, 398 U.S. 333, 366 (1970) (Harlan, J., concurring) (observing that there is good reason for courts to make necessary statutory repairs without impairing the legislative goals).[4]

---

[4] This analysis has been applied to guide the remedy whether the underlying infringement was a violation of the Equal Protection clause (*Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239 (1931), and *Mathews*); a violation of the uniformity of tax treatment as between local and interstate commerce, as implied in the Commerce Clause (*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990)); a violation of the First Amendment (*Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335 (2020)); or a violation of the Sixth Amendment right to a jury trial (*Booker*).

When determining which remedy the legislature would have chosen, courts are to make two additional assessments. *Morales-Santana*, 582 U.S. at 75 (citing *Welsh*, 398 U.S. at 365). The first is the court should "measure the intensity of commitment" to the "main rule, not the exception." *Id*. The second is that they should "consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation." *Id*. In *Morales-Santana*, the Court was faced with a statute's disparate treatment of the residency requirements of unwed mother and unwed fathers when passing citizenship to their children born abroad. Unwed citizen mothers were only required to have one year of residence in the United States while all other parents were required to have five. In deciding whether to extend the benefit of a shorter residency period required of unwed citizen mothers to unwed citizen fathers, the Court examined other portions of the citizenship law, and noted the congressional recognition of the longstanding importance of physical presence in citizenship law as the indicator of attachment to a country. *Id*. The Court also stated that the "potential for 'disruption of the statutory scheme' is large." *Id*. Because both factors pointed against extending the shorter residency exception, the Court nullified the favorable treatment for unwed mothers.

## IV.

Debtors in this case argue that they are entitled to a refund of the increased portion of the trustee fees—i.e. the difference between the fees charged to them and the fees charged to comparable

debtors in the BA districts—that they have been required to pay throughout 2018 and thereafter until Congress equalized the fees in the 2020 Act. They argue that strong Supreme Court precedent supports such refunds as the appropriate remedy. For this proposition, Debtors rely upon *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239 (1931), as representative of a long line of Supreme Court cases holding that a state's unequal taxation of comparable and competing taxpayers violates the Equal Protection Clause, and holding that the taxpayer who was required to pay the higher, discriminatory tax is entitled to a refund. Although acknowledging a state court could have removed the discrimination "by collecting the additional taxes from the favored competitors," *id.* at 247, the *Bennett* Court held that the taxpayer who paid the higher taxes was entitled to a refund. The Court held:

> But it is well settled that a taxpayer who has been subjected to discriminatory taxation through the favoring of others in violation of federal law cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid. Nor may he be remitted to the necessity of awaiting such action by the state officials upon their own initiative.

*Id.* at 247 (citations omitted).

Disagreeing with the Debtors, the U.S. Trustee's primary argument is that refunds are not the appropriate remedy in this case because Congress has already provided prospective relief in the 2020 Act. The U.S. Trustee argues that Congress, in the 2020 Act,

has already chosen the remedy option of extending the burden (the fee increase) to the previously excluded BA districts, thus rejecting the other option which would have nullified the burden (the fee increase) and warranted the refunds which Debtors seek.[5] The U.S. Trustee asserts that this remedial option is the one which will implement the very clear congressional intention all along that the 2017 fee increase was intended to apply to all federal judicial districts, including the BA districts.[6]

Recognizing that its primary argument—i.e. prospective relief only—fails to remedy the inequality that would remain during the time between 2018 and January 12, 2021 (the effective date of the 2020 Act, which cured the inequality prospectively), the U.S. Trustee makes a secondary, alternative argument, as follows. The alternative argument: even if retroactive relief were appropriate,

---

[5] The U.S. Trustee thus relies on the above-described framework that the Supreme Court has established for the determination of the appropriate remedy for constitutional violations like this. As noted above, a reviewing court should choose between two options: nullify the burden (the fee increase) or extend the burden (the fee increase) to those previously excluded (the BA districts), the choice to be guided by congressional intent.

[6] In support of this congressional intention, the U.S. Trustee refers to the evidence of this congressional intention as recited in this Court's first opinion in this case, *In re Mosaic*, 22 F.4th at 1310-19, as well as the 2020 Act itself which chose to extend the fee increase to the BA districts, *see* Pub. L. 116-325, sec. 3(d)(2), § 1930, 134 Stat. 5086, 5088, and its legislative finding, *see id.* at 5086 (Congress explicitly "confirm[ed] the longstanding intention of Congress that quarterly fee requirements remain consistent across all federal judicial districts.").

the remedy should not be refunds to comparable debtors in the U.S. Trustee districts like the Debtors here, but rather should be retroactive collections from comparable debtors in the BA districts who failed to pay the increased fees during 2018-2021 (i.e. what the parties here refer to as the "clawback").

We address first the U.S. Trustee's alternative argument because it is readily rejected. This Court does not have the authority to "claw back" additional fees from comparable debtors in the BA districts. Neither those debtors nor the BA Administrators who would prosecute the "clawback" are parties before this Court; thus we have no jurisdiction over them. Nor is the Judicial Conference—which would have the authority to order such "clawbacks"—a party before this Court. And some of the BA districts are located outside the Eleventh Circuit. Thus, the simple fact is that we cannot implement this alternative resolution suggested by the U.S. Trustee. And, as noted above, the Supreme Court in *Bennett* and several other cases have made it clear that the party "who has been subjected to [discrimination] through favoring others in violation of federal law cannot be required himself to assume the burden of seeking an increase of the taxes which other should have paid." 284 U.S. at 247. Of course, Congress or the Judicial Conference might have authority to order such "clawbacks," but there is no suggestion that either has moved to do so, or intends to do so. Indeed, as noted, Congress in the 2020 Act was aware of the constitutional violations and did choose the remedy of extending the burden (the increased fee) to the BA districts. However, Congress remedied the problem only prospectively and did not order such "clawbacks."

And, in *Bennett*, we are instructed that parties like the Debtors here "may [not] be remitted to the necessity of awaiting such action by the state officials upon their own initiative." *Id.* Moreover, it is altogether unclear whether, or to what extent, even Congress or the Judicial Conference could effect such "clawbacks" in light of the fact that, by now, the relevant bankruptcy estates have probably made substantial distributions or undergone other substantial change, or even closed.

Having rejected the U.S. Trustee's alternative argument, we turn to address its primary argument—i.e. that prospective-only relief is appropriate. The U.S. Trustee attempts to distinguish the *Bennett* decision and the other state tax cases upon which Debtors rely. The U.S. Trustee argues that in those cases, the taxpayers seeking refunds had been forced to pay the tax initially; they had no "meaningful opportunity to withhold payment and to obtain a pre-deprivation determination of the tax assessment's validity." *McKesson Corp.*, 496 U.S. at 38. The U.S. Trustee argues that this case is in sharp contrast: here the debtors could have challenged the constitutionality of the increase—employing either routine motion or adversary proceeding—before the first installment became due in the first quarter of 2018. They rely upon the dicta in *McKesson* suggesting that the refunds ordered in that case and the long line of Supreme Court cases upon which *McKesson* (and the Debtors here) rely were dependent upon the fact that no meaningful pre-deprivation remedy was available. *See id.* at 38 n.21 ("In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold

20-12547                Opinion of the Court                13

contested tax assessments and to challenge their validity in a pre-deprivation hearing, payments tendered may be deemed 'voluntary.' The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure. Where voluntary payment of a tax is knowingly made pursuant to an illegal demand, recovery of that payment may be denied") (citation and quotation marks omitted).

Thus, the U.S. Trustee argues that the appropriate remedy in this case is a prospective-only remedy, which remedy Congress has already provided in the 2020 Act. It argues that there is precedent for such a prospective-only remedy, citing *Morales-Santana*, 582 U.S. at 77, and that this is the remedy that would implement congressional intent.

The U.S. Trustee's argument based on the *McKesson* dicta and the availability of a predeprivation remedy has been squarely rejected by the Supreme Court. In *Reich v. Collins*, 513 U.S. 106 (1994), the State of Georgia had exempted from the state income tax retirement benefits paid by the state but not retirement benefits paid by the federal government or any other employer. After the Supreme Court in *Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), held that such a tax scheme violated the constitutional intergovernmental tax immunity doctrine, Georgia repealed its exemption for state retirees, but did not allow refunds for federal retirees for the open years before *Davis* during which the differential

in tax had existed.  A federal retiree challenged that unequal tax treatment, relying on the same cases on which the Debtors here rely, including *McKesson* and *Bennett*. In rejecting the federal retiree's claim for refunds, the Georgia Supreme Court held that *McKesson*, *Bennett*, and similar cases that required refunds would not apply and refunds would not be required if Georgia law provided a meaningful opportunity to litigate the validity of the challenged tax in a predeprivation process.  Concluding that Georgia provided "ample" predeprivation procedures, the Georgia Supreme Court denied the refunds sought by the federal retiree.  The Supreme Court granted certiorari and reversed the Georgia Supreme Court:

> The Georgia Supreme Court is no doubt right that, under *McKesson*, Georgia has the flexibility to maintain an exclusively predeprivation remedial scheme, so long as that scheme is "clear and certain." . . . In this regard, the Georgia Supreme Court's reliance on Georgia's predeprivation procedures was entirely beside the point (and thus error), because even assuming the constitutional adequacy of these procedures—an issue on which we express no view—no reasonable taxpayer would have thought that they represented, in light of the apparent applicability of the refund statute, the *exclusive* remedy for unlawful taxes.

513 U.S. at 111-12 (emphasis in original).

In *Newsweek, Inc. v. Florida Department of Revenue*, 522 U.S. 442 (1998), the Court again rejected the same argument based on

20-12547                Opinion of the Court                    15

the *McKesson* dicta and the availability of a predeprivation remedy. The Florida statutes exempted newspapers but not magazines from its sales tax. The Florida Supreme Court held that the differential tax treatment violated the First Amendment. However, the Department of Revenue rejected Newsweek's claim for refund, and the Florida District Court of Appeals agreed, holding that "*McKesson* is distinguishable because that holding was expressly predicated upon the fact that the taxpayer had no meaningful predeprivation remedy." *Newsweek, Inc. v. Dept. of Rev.*, 689 So.2d 361, 363 (Fla. Dist. Ct. App. 1997). Concluding that in Florida, adequate predeprivation remedies were available to the taxpayer, the District Court of Appeals denied the refund. In vacating the judgment of the District Court of Appeals, and granting access to the refund procedure, the Supreme Court held: "a State has the flexibility to maintain an *exclusively* predeprivation remedial scheme, so long as that scheme is clear and certain." *Id.* at 444 (quotations and citations omitted; emphasis added).

Thus, in both *Reich* and *Newsweek* the Supreme Court clarified *McKesson*, ruling that, in cases of differential tax treatment of comparable taxpayers, the state can remedy the constitutional violation by choosing to extend the burden (the tax) to the previously favored group. However, because the relevant law and available procedures permitted both predeprivation and postdeprivation process, both courts held that due process would not permit the state to insist on the predeprivation remedy to the exclusion of the postdeprivation refund remedy unless the exclusivity of the predeprivation remedy was clear such that reasonable persons would

not be misled.  In other words, except in the unusual context of a clear, exclusive predeprivation remedy, the past inequality must be accounted for and the disfavored taxpayer is entitled to appropriate refunds.

Thus, the Supreme Court has squarely rejected the U.S. Trustee's distinction of *McKesson*, *Bennett*, and the other state tax cases on which Debtors here rely.  Just as in *Reich* and *Newsweek*, in this case also, routine bankruptcy procedures—whether simple motion or adversary proceeding—were available both predeprivation or postdeprivation.  That is, Debtors here could have challenged the increased fee before paying same in early 2018 (predeprivation) and those same routine procedures were available postdeprivation, as actually utilized by Debtors in this case.  In any event, it certainly was not clear that the available predeprivation process was exclusive.  Thus, *Reich* and *Newsweek* squarely reject the U.S. Trustee's primary support for prospective relief only—i.e. that *McKesson*-based distinction of the Debtors state tax cases requiring refunds in a similar context.

The significance of *Reich* and *Newsweek* for the instant case is not limited to their express rejection of the U.S. Trustee's primary argument in support of prospective-only relief.  These decisions also provide significant guidance for this case in that they came to the Supreme Court in precisely the same posture that this case comes to us.  As both *Reich* and *Newsweek* came to the Supreme Court, the constitutional violation had previously been

established.[7] In both cases, it had already been determined that the constitutional violation should be remedied by extending the burden (the tax) to the previously favored group.[8]  In both cases, the state courts had denied the refunds that were claimed by the taxpayers who had been discriminated against and had had to pay the higher taxes during the open years before the tax scheme was equalized by extending the tax to the previously favored group.[9]

In other words, in both *Reich* and *Newsweek*, the state law had chosen to cure the constitutional violation by prospectively extending the burden (the tax) to the previously favored group, but

---

[7] In *Reich*, the Supreme Court had already determined in *Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), that Georgia's differential treatment of state retirees and federal retirees violated the Constitution. *Reich*, 513 U.S. at 108.  In *Newsweek*, the Florida Supreme Court had already held that Florida's exemption from its sales tax of newspapers but not magazines violated the Constitution. *Newsweek*, 522 U.S. at 442; *see also Dept. of Rev. v. Magazine Publishers of Am.*, 604 So.2d 459 (Fla. 1992).

[8] In *Reich*, the Georgia legislature had repealed the exemption from tax for newspapers. *See Reich*, 513 U.S. at 108; *see also Reich v. Collins*, 422 S.E.2d 846, 847 (Ga. 1992) (noting that after the Supreme Court in *Davis* determined that Georgia's differential treatment of state retirees and federal retirees was unconstitutional, the Georgia legislature repealed the exemption for state retirees).  In the *Newsweek* case, the Florida Supreme Court held that Florida's exemption for tax for newspapers but not magazines was unconstitutional, and held that the proper remedy was to strike the exemption for newspapers. *See Magazine Publishers*, 604 So.2d at 463-64.

[9] *See Reich*, 513 U.S. at 108 (noting that Georgia repealed the exemption for state retirees, but denied refunds for federal retirees).  *See Newsweek*, 522 U.S. at 443 (noting that the Florida court had denied refunds for the magazines).

had denied refunds to the taxpayers who had been discriminated against. In short, the state law had provided prospective-only relief. The Supreme Court reversed, and held that due process required refunds.[10]

The instant case comes to us in precisely the same posture that *Reich* and *Newsweek* had come to the Supreme Court:

- As in *Reich* and *Newsweek*, the fact of the constitutional violation in this case has been established. *See Siegel*, 142 S. Ct. at 1789.

- As in *Reich* and *Newsweek*, Congress has chosen to cure the constitutional violation by prospectively extending the burden (the fee increase) to the previously favored group (the BA districts). *See* the 2020 Act, Pub. L. 116-325, 134 Stat. 5086.

- As in the state court stage of the *Reich* and *Newsweek* cases, the U.S. Trustee urges us to approve a prospective-only remedy and deny refunds to the Debtors in this case.

We conclude that we should follow the guidance of the Supreme Court decisions in *Reich* and *Newsweek* and *Bennett* (and the other state tax cases upon which the Debtors rely). We conclude that the prospective-only relief urged upon us by the U.S. Trustee is not appropriate in this case.

---

[10] Indeed, the long line of state tax cases mentioned above involved the same posture and the same result. *See, e.g., McKesson*, 496 U.S. at 31 ("The question before us is whether prospective relief, by itself, exhausts the requirements of federal law. The answer is no").

20-12547                Opinion of the Court                19

We acknowledge the strong evidence of congressional intention preferring the maintenance of the increased level of fees. However, we note that the legislative intention in *Reich* and *Newsweek* was the same. In *Reich*, the Georgia legislature had repealed the exemption for state retirees, indicating its preference for the tax over the exemption. The legislative intent was the same, but even clearer, in *Newsweek*. There, the Florida Supreme Court had already—well before the U.S. Supreme Court's *Newsweek* decision in 1998—expressly held that the legislative intent preferred the tax over the exemption. *See Magazine Publishers*, 604 So.2d at 463 ("Section 212.21 makes it clear that as between the imposition of the tax or the granting of an exemption, the tax shall prevail."). Notwithstanding this legislative intent, the Supreme Court held that due process required refunds.

Of course the result in *Reich* and *Newsweek*—and the result in this case since we follow *Reich* and *Newsweek*—partially implements the legislative intent in that the tax was to be maintained in the future. Although the refunds ordered by the Supreme Court in *Reich* and *Newsweek* may have been in tension with the legislative intent, such legislative intent cannot overcome the requirements of due process. *See Newsweek*, 522 U.S. at 445 ("due process prevents [the Department of Revenue] from applying this requirement to taxpayers, like Newsweek, who reasonably relied on the apparent availability of a postpayment refund"). Thus, the results in *Reich* and *Newsweek* allow implementation of as much of the legislative intent as due process would permit. Similarly, in the instant case, our result—requiring refunds, but recognizing future

application of the fee increase, as mandated by Congress in the 2020 Act—implements as much of the congressional intent as due process permits.

The only other support offered by the U.S. Trustee for the prospective-only relief that it advocates is its citation to *Morales-Santana*, 582 U.S. at 77, which did provide prospective-only relief in a very different context.[11]  For several reasons, we conclude that we should be guided by *Reich*, *Newsweek*, *Bennett*, and the other analogous state tax cases, rather than by *Morales-Santana*.  First, the Court in *Morales-Santana* merely concludes at the end of the opinion that its ruling "should apply, prospectively, to children born to unwed U.S.-citizen mothers."  582 U.S. at 77.  There is no explanation on the basis of which we could be sure of a governing principle of law defining when prospective application is appropriate.  Second, and significantly, the instant case is closely analogous to *Reich* and *Newsweek*, for the reasons fully discussed above, but is very different from the *Morales-Santana* case.  The right to citizenship issue in *Morales-Santana* is very different from the inequality in trustee fees at issue in this case.  As Justice Thomas, joined by Justice Alito, said in his concurring opinion, it is far from clear whether any court, even the Supreme Court, has the power to confer or

---

[11] The U.S. Trustee also cites the plurality opinion in *Barr v. American Association of Political Consultants*, 591 U.S. __, 140 S. Ct. 2335, 2355 n.12 (2020), which also suggests prospective-only relief.  However, like *Morales-Santana*, the plurality provides no explanation.  Moreover, the prospective-only relief appears to have been supported only by the two concurring Justices, plus possibly Justice Sotomayor (i.e. a total of only four Justices).

withdraw citizenship on a basis other than as prescribed by Congress.  *Id.* at 78.  Moreover, retrospective application of the Court's ruling would have been extremely harsh.  That is, it is virtually unthinkable for the Court to have withdrawn the citizenship from children of unwed mothers already born and who had already qualified for citizenship under the previous one-year residency rule.

A third and significant reason prompting us to follow the guidance of *Reich*, *Newsweek*, and *Bennett* is that we are also following the "normal rule of retroactive application" of Supreme Court decisions.  *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97 (1993); *see also id.* at 94 (acknowledging "fundamental rule of retrospective operation that has governed judicial decisions for near a thousand years.")(cleaned up).  This is especially true in this case because the rule identified in *Siegel* was not even a "new" rule which might in some circumstances have warranted prospectively-only relief.[12]

---

[12]  The risk of this constitutional violation of the Bankruptcy Uniformity Clause has been apparent since the Ninth Circuit so ruled.  *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), *amended by* 467 F.3d 969 (9th Cir. 1995).  That ruling prompted the Judicial Conference and Congress to act to avoid this risk.  That led to the 2000 legislation which Congress intended to ensure that uniform trustee fees would apply in all federal judicial districts—both US Trustee and BA districts.  *See* discussion in our earlier opinion in this case, 22 F.4th at 1310-19; *see also* the congressional finding in the 2020 Act ("confirm[ing] the longstanding intention of Congress that quarterly fee requirements remain consistent across all federal judicial districts").  Thus, Congress has been aware of the constitutional risks of differential trustee fees in the IUS Trustee districts, as compared to the BA districts, for more than two decades.  Accordingly, the Supreme Court's holding in *Siegel* did not announce a "new" rule.

Finally, in so holding we reach the same result reached by every court to have addressed this issue. The Second Circuit[13] and the Tenth Circuit[14] have ordered refunds for debtors in precisely the same context as the Debtors in this case. Although the Second Circuit provided no rationale at all, and although the Tenth Circuit only noted that it lacked authority over the fees in the BA districts and that the Second Circuit had already so ruled, we suspect that our sister circuit courts probably were thinking along the lines of the analysis we set out in this opinion. The only other court that has addressed this issue is *In re Circuit City Stores, Inc.*, 2022 WL 17722849 (Bankr. E.D. Va. Dec. 15, 2022). The bankruptcy judge in that case followed the Second and Tenth Circuits and granted refunds to debtors comparable to the Debtors in this case. The bankruptcy judge distinguished the *Morales-Santana* decision and relied on the same long line of state tax cases upon which we too rely (e.g. *Bennett*, etc.).

---

The U.S. Trustee offers no analysis or briefing to explain why prospective-only relief would be appropriate in this case. *See Harper*, 509 U.S. at 94-102; *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991); Richard S. Kay, *Retroactivity and Prospectivity of Judgments in American Law*, 62 AM. J. COMP. L. 37 (2014). Thus, we follow the "normal" rule and apply the *Siegel* holding retroactively, subject of course to any independent defense—e.g. statutes of limitation or sovereign immunity.

[13] *In re: Clinton Nurseries, Inc.*, 53 F.4th 15, 29 (2d Cir. 2022), *amending and reinstating* 998 F.3d 56, 69-70 (2d Cir. 2021).

[14] *In re John Q. Hammons Fall 2006, LLC*, No. 20 3203, 2022 WL 3354682 (10th Cir. Aug. 15, 2022), *reinstating* 15 F.4th 1011, 1025-26 (10th Cir. 2021).

For the foregoing reasons,[15] we conclude that *Reich*, *Newsweek*, *Bennett*, *McKesson*, and the long line of similar state tax cases are closely analogous to the instant case and provide strong precedent supporting the refund remedy urged upon us by the Debtors. Accordingly, we hold that the appropriate remedy in this case for the constitutional violation identified in *Siegel* is the refunds that the Debtors in this case seek. The judgment of the court below is vacated, and this case is remanded for further proceedings not inconsistent with this opinion.

**VACATED** and **REMANDED**.

---

[15] The U.S. Trustee suggest no other defense or bar to the refunds that Debtors seek—e.g. statute of limitations or sovereign immunity. As noted, the U.S. Trustee at oral argument affirmatively disavowed any sovereign immunity bar.

20-12547                BRASHER, J., Concurring                1

BRASHER, Circuit Judge, concurring:

I respectfully concur with the bottom-line result of the majority opinion, although I cannot agree with all of its reasoning.

When this appeal was last before us, I wrote separately to make two points. First, I explained that "the substantial variance in fees as between the Trustee and Bankruptcy Administrator districts amounts to an unconstitutional lack of uniformity." *In re Mosaic Mgmt. Grp., Inc.*, 22 F.4th 1291, 1328 (11th Cir. 2022) (Brasher, J., concurring). Second, I concluded that the investment trustee's "requested remedy—a refund of the higher fees, which were imposed in 94% of the districts—is inappropriate because it is demonstrably at odds with Congress's intent." *Id.* The Supreme Court reached the same conclusion as me on the first issue and remanded for us to consider the second issue. *See Bast Amron LLP v. United States Tr. Region 21.*, 142 S. Ct. 2862 (2022), and *Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022).

When a statute creates an unconstitutional disparity in treatment, "there exist two remedial alternatives." *Califano v. Westcott*, 443 U.S. 76, 89 (1979) (cleaned up) (quoting *Welsh v. United States*, 398 U.S. 333, 361 (1970) (Harlan, J., concurring in result)). A court can level up by extending the favorable treatment to everyone or level down by treating everyone like the disfavored class. A court's choice between the two remedies must be guided by legislative intent. *See Sessions v. Morales-Santana*, --- U.S. ---, 137 S. Ct. 1678, 1699 (2017). An intent to level up is the default presumption, but an intent to level down may be inferred where the favorable treatment

was meant to be an "exception" to the "general rule . . . applicable to a substantial majority." *Id.* at 1701.

As I explained last time, it is obvious that Congress's intent supports the conclusion that we must level down. *See Mosaic Mgmt. Grp*, 22 F.4th at 1329−30 (Brasher, J., concurring). The favorable treatment here was a tiny exception to an otherwise comprehensive scheme, and it was an accidental exception at that. *Id.* As a matter of equal treatment law, that is where the inquiry ends. We should level down, even if such leveling down results in a prospective-only remedy or requires joining other parties. I therefore cannot agree with the majority's attempt to distinguish equal treatment cases, such as *Sessions v. Morales-Santana*, from this one.

That said, however, I have since "acquired new wisdom" or "more critically, have discarded old ignorance" that leads me to change my bottom-line conclusion. *Ring v. Arizona*, 536 U.S. 584, 611 (2002) (Scalia, J., concurring). Specifically, the investment trustee has identified a due process problem with a prospective-only remedy, and I believe that the trustee's due process argument has merit.

When a person has been compelled by law to pay a tax or fee, then that person has been deprived of property. To justify that deprivation, the government must "satisfy the commands of the Due Process Clause." *McKesson Corporation v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 36 (1990). In a case like this one, the due process clause commands that the government provide "meaningful backward-looking relief" if it has placed a taxpayer

20-12547                    BRASHER, J., Concurring                    3

(or, here, a feepayer) "under duress promptly to pay a tax when due" without the opportunity to fully litigate its legality. *Id.* at 31.

Despite my views of the proper equal treatment remedy, I think the investment trustee has a due process right to a refund. This is so for two reasons.

First, the government provided an opportunity to challenge the legality of the fee, and the investment trustee took advantage of it. The investment trustee challenged the imposition of the fee at the earliest opportunity in the very bankruptcy case in which the fee was imposed—this one. Having lost that challenge in the bankruptcy court, the investment trustee was under a legal obligation to pay the fee. This fact—that the investment trustee availed itself of a process to challenge the fee—distinguishes it from someone who belatedly seeks a refund of a fee that he never contested. It would be inconsistent with due process to deny a backwards-looking remedy when the investment trustee challenged the fee at an early opportunity and then paid it under protest.

Second, a level-up refund remedy is our only option because there is no lawful way to implement a backward-looking level-down remedy. The creditors and debtors in the favored class of bankruptcy cases have their own due process rights that prevent us from retroactively assessing higher fees in those cases. Although the imposition of a retroactive tax "does not necessarily deny due process to those whose taxes are increased," there is "some temporal point" beyond which "the retroactive imposition of a significant tax burden may be 'so harsh and opposed as to transgress the

constitutional limitation.'" *Id.* at 40 n.23 (quoting *Welch v. Henry*, 305 U.S. 134, 147 (1938)). I think we have reached that point. Even though only a small number of bankruptcy cases would be affected by a retroactive fee, too much time has passed to increase the fees consistent with due process. This is especially true of bankruptcy cases that have already been closed and the estate's assets distributed or reorganized.

For these reasons, I respectfully concur in the result.