**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| USA SALES, INC., DBA Statewide Distributors, a California Corporation, | No. 21-55643 |
| *Plaintiff-Appellee,* | D.C. No. 5:19-cv-02133-JWH-KK |
| v. | |
| OFFICE OF THE UNITED STATES TRUSTEE, | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Central District of California
John W. Holcomb, District Judge, Presiding

Argued and Submitted June 7, 2023
Pasadena, California

Filed August 10, 2023

Before: Susan P. Graber and John B. Owens, Circuit
Judges, and John R. Tunheim,[*] District Judge.

Opinion by Judge Owens

---

[*] The Honorable John R. Tunheim, United States District Judge for the
District of Minnesota, sitting by designation.

# SUMMARY[**]

## Bankruptcy

Affirming the district court's refund order, the panel held that USA Sales, Inc., was entitled to a refund for the unconstitutional statutory fees it paid as a bankruptcy debtor under the Bankruptcy Judgeship Act of 2017.

A provision of the 2017 Act increased the quarterly statutory fees for certain Chapter 11 debtors in all but the six judicial districts in which Bankruptcy Administrators, rather than the Office of the United States Trustee, administratively manage bankruptcy proceedings. In *Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022), the Supreme Court held that this provision, by not including those six districts, violated the uniformity requirement of the Bankruptcy Clause.

The panel held that the 2017 Act applied to USA Sales's bankruptcy proceeding, even though its case was already pending when the Act took effect. Turning to the remedy, and agreeing with other circuits, the panel held that U.S. Trustee district debtors are entitled to a refund of excess fees paid during the nonuniform period of statutory rates. Accordingly, USA Sales was entitled to a refund of the unconstitutional fees it paid in excess of those it would have paid in a Bankruptcy Administrator district from January 2018, when the 2017 Act fee provision took effect, to November 2019, when the bankruptcy court approved a structured dismissal of USA Sales's case.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jeffrey E. Sandberg (argued) and Mark B. Stern, Appellate Staff Attorneys; Sumi Sakata and Wendy Cox, Trial Attorneys; P. Matthew Sutko, Associate General Counsel; Ramona D. Elliott, Deputy Director/General Counsel; Executive Office for United States Trustees; Martin Estrada, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Jasmin Yang, Assistant United States Attorney, United States Attorney's Office, Los Angeles, California; for Defendant-Appellant.

A. Lavar Taylor (argued) and Lisa O. Nelson, Taylor Nelson Amitrano LLP, Santa Ana, California, for Plaintiff-Appellee.

## OPINION

OWENS, Circuit Judge:

A provision of the Bankruptcy Judgeship Act of 2017 dramatically increased the statutory fees for certain debtors in all but six judicial districts. In *Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1775 (2022), the Supreme Court held that the provision, by not including those six districts, violated the uniformity requirement of the Bankruptcy Clause, U.S. Const. art I, § 8, cl. 4.[1] This case requires us to address the question that the Court left open: are debtors who paid these

---

[1] The Bankruptcy Clause empowers Congress to pass "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art I, § 8, cl. 4.

unconstitutional fees entitled to a refund? Or can the government take the money and run? As has every other court to address this issue, we hold that debtors are entitled to a refund of excess fees paid during the nonuniform period of statutory rates.

## I. Background

The Office of the United States Trustee ("UST") administratively manages bankruptcy proceedings for the vast majority of the country. *Siegel*, 142 S. Ct. at 1775-76. An older system of Bankruptcy Administrators ("BA") performs the same function in six districts in Alabama and North Carolina. *Id.* Initially, the BA system did not charge user fees to debtors. *Id.* at 1776. But after we held this fee differential unconstitutional, *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1531-32 (9th Cir. 1994), *amended by* 46 F.3d 969 (9th Cir. 1995), Congress authorized equivalent fees in BA districts, and fees remained uniform in the two systems until 2017. *Siegel*, 142 S. Ct. at 1776-77.

In 2017, Congress drastically increased the quarterly fees for Chapter 11 debtors that have large disbursements in UST districts. Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, div. B, § 1004(a), 131 Stat. 1229, 1232 (codified at 28 U.S.C. § 1930(a)(6)(B) (2018)) ("2017 Act"). The fees went into effect in January 2018 in UST districts. *Siegel*, 142 S. Ct. at 1777. BA districts did not raise quarterly fees to match until October 2018, and even then did not apply the increase to debtors with pending filings as in UST districts. *Id.* In response, litigation sprang up across the country, culminating last year in *Siegel*, in which the Supreme Court held that nonuniform fees between UST and BA districts violated the uniformity requirement of the Bankruptcy Clause of the Constitution. *Id.* at 1778-83. The Court

expressly avoided determining the appropriate remedy for debtors who had paid the unconstitutional fees. *Id.* at 1783. In 2020, while litigation was ongoing, Congress stepped in to mandate equivalent fees in UST and BA districts statutorily but made no mention of debtors who had already paid the higher fees. Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325, sec. 3, § (d)(2), 134 Stat. 5086, 5088 (codified at 28 U.S.C. § 1930(a)(7)) ("2020 Act").

In the instant case, USA Sales, a California tobacco distributor, filed for Chapter 11 bankruptcy in 2016. As a Chapter 11 debtor in a UST district, federal law required USA Sales to pay quarterly fees to the UST. 28 U.S.C. § 1930(a)(6). Failure to pay such fees risked liquidation and dismissal of the case. 11 U.S.C. § 1112(b)(1), (b)(4)(K). Before 2018, USA Sales' disbursement fees were $13,000 per quarter. Under the 2017 Act, the disbursement fees skyrocketed to around $87,000 per quarter. From January 2018 through November 2019, when the bankruptcy court approved a structured dismissal of the case, the UST assessed $595,849 in fees in excess of what USA Sales would have paid in a BA district.

USA Sales sued for a refund of all excess fees paid, arguing that the 2017 Act violated the Bankruptcy Clause and also that the 2017 Act did not apply because USA Sales had filed for bankruptcy before the Act took effect. The district court agreed with both arguments and ordered a refund. The district court entered a stay, and the UST timely appealed. After the stay was entered and the notice of appeal filed, the Supreme Court issued its decision in *Siegel*, which confirmed that the 2017 Act violated the Bankruptcy Clause's uniformity requirement. 142 S. Ct. at 1775. We have jurisdiction under 28 U.S.C. § 1291 and review this

appeal *de novo*.  *See In re DBSI, Inc.*, 869 F.3d 1004, 1007 n.2 (9th Cir. 2017).

## II.  Discussion

As an initial matter, we disagree with the district court and hold that the 2017 Act applied to USA Sales' bankruptcy proceeding even though its case was already pending when the Act took effect.[2]  The 2017 Act is not retroactive, let alone impermissibly so.  Although USA Sales' obligation to pay quarterly fees arose from its 2016 bankruptcy filing, the 2017 Act applied only to disbursements made *after* the Act's effective date.    And a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (citation omitted). "Just as a homeowner must honor property tax laws enacted after she purchases a home, [USA Sales] must abide by the statutory fee schedule enacted after the court confirmed its plan." *Buffets*, 979 F.3d at 376.

---

[2] We thus join every other circuit to have answered this question.  *See In re Mosaic Mgmt. Grp., Inc.*, 22 F.4th 1291, 1297-1303 (11th Cir. 2022), *vacated sub nom. Bast Amron LLP v. U.S. Tr. Region 21*, 142 S. Ct. 2862 (2022); *In re John Q. Hammons Fall 2006, LLC*, 15 F.4th 1011, 1019-21 (10th Cir. 2021), *vacated sub nom. Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, 142 S. Ct. 2810 (2022), and *reinstated by* No. 20-3203, 2022 WL 3354682 (10th Cir. Aug. 15, 2022), *petition for cert. filed sub nom. Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, No. 22-1238, 2023 WL 4201139 (U.S. June 23, 2023); *In re Circuit City Stores, Inc.*, 996 F.3d 156, 167-69 (4th Cir. 2021), *rev'd on other grounds and remanded*, *Siegel*, 142 S. Ct. at 1781; *In re Buffets, LLC*, 979 F.3d 366, 374 (5th Cir. 2020), *abrogated on other grounds by Siegel*, 142 S. Ct. at 1781.

Because the 2017 Act applied to USA Sales, we turn to the question of remedy, as the UST collected nearly $600,000 in excess fees from USA Sales under a statute that the Supreme Court unanimously declared unconstitutional more than a year ago. *Siegel*, 142 S. Ct. at 1775. Not surprisingly, this case is not the first to consider the proper remedy. And, even less surprisingly, every court to address the proper remedy (including the district court here) has held that the government must refund the excess money it collected. *In re Mosaic Mgmt. Grp., Inc.*, 71 F.4th 1341, 1353-54 (11th Cir. 2023) ("[W]e hold that the appropriate remedy in this case for the constitutional violation identified in *Siegel* is the refunds that the Debtors . . . seek.").[3] "As a general rule, 'we decline to create a circuit split unless there is a compelling reason to do so.'" *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2018) (citation omitted)).

Yet, according to the UST, USA Sales has received its remedy even though it has not received any refund. To support this conclusion, the UST relies on two theories. First, it contends that the forward-looking relief provided by the 2020 Act's mandate of equal collection of quarterly fees is remedy enough. 28 U.S.C. § 1930(a)(7). Second, assuming that retrospective relief is required, the UST argues that the remedy should be retroactively imposing additional fees on debtors in BA districts ("clawbacks")

---

[3] *See also In re Clinton Nurseries, Inc.*, 53 F.4th 15, 29 (2d Cir. 2022), *petition for cert. filed sub nom. Harrington v. Clinton Nurseries, Inc.*, No. 23-47 (U.S. July 17, 2023); *Hammons*, 15 F.4th at 1026; *In re Circuit City Stores, Inc.*, No. 08-35653, 2022 WL 17722849, at *5 (Bankr. E.D. Va. Dec. 15, 2022); *In re VG Liquidation, Inc.*, No. 18-11120, 2023 WL 3560414, at *7 (Bankr. D. Del. May 18, 2023).

instead of refunding debtors in UST districts the excess fees they paid ("refunds").

### a. Prospective relief is not a sufficient remedy.

To start, "[p]rospective relief alone provides no relief" and instead serves "to cement the unconstitutional treatment." *Circuit City*, 2022 WL 17722849, at *3; *see also McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regul. of Fla.*, 496 U.S. 18, 31 (1990). Simply put, promising not to take the money again is not the same as giving the money back.

We agree with the Eleventh Circuit that the Supreme Court's case law regarding remedies for unconstitutionally discriminatory taxes guides our analysis. *See Mosaic Mgmt.*, 71 F.4th at 1350-53 ("[W]e conclude that *Reich*, *Newsweek*, *Bennett*, *McKesson*, and the long line of similar state tax cases are closely analogous to the instant case and provide strong precedent supporting the refund remedy urged upon us by the Debtors."). As here, the tax cases involved a monetary injury inflicted by the government pursuant to an unconstitutionally discriminatory statute and a decision by a court or legislature to extend the tax burden prospectively (here, the higher quarterly fees) to those who had been exempt (here, debtors in BA districts who had lower fees). *Id.* at 1351; *McKesson*, 496 U.S. at 22; *Newsweek, Inc. v. Fla. Dep't of Revenue*, 522 U.S. 442, 442-43 (1998); *Reich v. Collins*, 513 U.S. 106, 108 (1994); *see also Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 240-44 (1931). Each of these cases held that the state owed the taxpayer retrospective relief even though it had already fixed the constitutional problem going forward. *See McKesson*, 496 U.S. at 22, 31, 51 (ordering "meaningful backward-looking relief"); *Reich*, 513 U.S. at 114 (same); *Newsweek*, 522 U.S.

at 444-45 (ordering that the petitioner must have access to Florida tax refund procedures); *Bennett*, 284 U.S. at 247 (granting a refund and rejecting the possibility of clawbacks because a taxpayer cannot be expected to collect retroactive taxes from the previously exempt taxpayers or wait for the state to do so); *see also Mont. Nat'l Bank of Billings v. Yellowstone County*, 276 U.S. 499, 504-05 (1928) (granting a refund and rejecting the possibility of clawbacks because state tax officials had not indicated that they would collect retroactive taxes).

For instance, in *McKesson*, the Florida Supreme Court had declared a liquor excise tax scheme unconstitutional because it favored local products in violation of the Commerce Clause. 496 U.S. at 22. The state court enjoined the favorable treatment of local products but did not grant relief to the petitioner who had already paid the higher, illegal tax. *Id.* The Court reversed, holding:

> The question before us is whether prospective relief, by itself, exhausts the requirements of federal law. The answer is no: If a State places a taxpayer under duress promptly to pay a tax when due . . . the Due Process Clause . . . obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

*Id.* at 31. The Court further explained that "a taxpayer pays under duress when he proffers a timely payment merely to avoid a serious disadvantage in the assertion of his legal rights." *Id.* at 38 n.21 (cleaned up). Here, just as the Florida Office of the Comptroller collected an illegal tax under "duress," the UST collected illegal excess quarterly fees

from USA Sales, paid to avoid the "serious disadvantage" of liquidation or dismissal of the bankruptcy proceeding. The Due Process Clause therefore "obligates [the UST] to provide meaningful backward-looking relief." *Id.* at 31.

The UST attempts to distinguish the tax cases by limiting their holding to circumstances in which the plaintiff had no meaningful opportunity to challenge the tax before paying it. *See id.* at 22. However, the Supreme Court has explained that due process requires post-payment relief unless a "reasonable taxpayer would have thought that [the pre-payment remedy] represented . . . the *exclusive* remedy for unlawful taxes." *Reich*, 513 U.S. at 111; *see also Newsweek*, 522 U.S. at 444-45. "[E]xcept in the unusual context of a clear, exclusive predeprivation remedy, the past inequality must be accounted for and the disfavored taxpayer is entitled to appropriate refunds." *Mosaic Mgmt.*, 71 F.4th at 1350. Here, USA Sales "could have challenged the increased fee before paying . . . in early 2018 (predeprivation) . . . . [but] it certainly was not clear that the available predeprivation process was exclusive." *Id.* Because it was reasonable for USA Sales to pay the quarterly fees to avoid liquidation or dismissal and to challenge them only later, retrospective relief is warranted.

The UST argues that we should follow other constitutional remedies cases rather than the tax cases. First, it contends that *St. Angelo*, 38 F.3d at 1531-32, confronted a similar violation of the Bankruptcy Clause and "expressly rejected the debtor's contention that the proper remedy was to relieve it from paying the disputed quarterly fees." But that argument overreads *St. Angelo* because, there, the debtor did not seek a refund; rather, the UST sought higher fees due to a dispute over the calculation of the debtor's disbursements. 38 F.3d at 1528; *see also Circuit City*, 2022

WL 17722849, at *3 n.6 (rejecting the UST's reliance on *St. Angelo* because it is not "on point").

The other cases on which the UST depends are no more helpful to our analysis. Although the Supreme Court departed from the "normal rule of retroactive application" and granted prospective-only relief in *Sessions v. Morales-Santana*, 582 U.S. 47, 72-77 (2017), and *Barr v. American Ass'n of Political Consultants*, 140 S. Ct. 2335, 2354-56 (2020) ("*AAPC*"), neither case involved monetary injuries. *Mosaic Mgmt.*, 71 F.4th at 1353 (citation omitted). Nor did either case provide an "explanation on the basis of which we could be sure of a governing principle of law defining when prospective application is appropriate." *Id.* at 1352 & n.11. And for good reason—the plaintiff in *AAPC* did not request retrospective relief and the court barely addressed it, *see AAPC*, 140 S. Ct. at 2355 n.12, and *Morales-Santana* is "hardly the typical case," *Morales-Santana*, 582 U.S. at 77. Retrospective relief in *Morales-Santana* involved conferring or withdrawing citizenship, and "it is far from clear whether any court, even the Supreme Court, has the power to confer or withdraw citizenship on a basis other than as prescribed by Congress." *Mosaic Mgmt.*, 71 F.4th at 1352. For these reasons, we agree with the Eleventh Circuit that these cases do not govern our analysis.

### b. USA Sales is entitled to a refund.

Having established that retrospective relief is necessary, we turn to the form that relief should take. According to the UST, "the proper course would be to establish equal treatment by pursuing recovery of additional fees from debtors in the six BA districts." We are not persuaded.

First and foremost, we are a court of limited jurisdiction. We have no power to order districts in the

Fourth and Eleventh Circuits to collect fees from debtors who may have closed their cases long ago. *Accord Hammons*, 15 F.4th at 1026 ("We lack authority over quarterly fees assessed in districts outside our circuit, and thus in Alabama or North Carolina."); *Circuit City*, 2022 WL 17722849, at *4. The UST has conceded as much in a nearly identical case. *See Hammons*, 15 F.4th at 1025 ("Though raising fees in Alabama and North Carolina might solve this problem, the Trustee recognizes that we lack authority to do that.").

Second, the UST's plan violates one of the core tenets of the bankruptcy code—finality. Federal courts have repeatedly stressed "the particular need for finality in bankruptcy" in doctrines such as equitable mootness. *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172 (9th Cir. 1988) (internal quotation marks omitted); *see also Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007). As we have explained, bankruptcies can be very complex, with extensive reliance on certainty by debtors, creditors, and third parties. *See In re Mortgs. Ltd.*, 771 F.3d 1211, 1215 (9th Cir. 2014). "The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (cleaned up). The UST's proposed solution—creating a regime in which the government potentially could track down bankrupt and dissolved entities after more than half a decade to seek much larger fees (and presumably interest)—runs counter to this primary purpose.[4]

---

[4] The UST's suggestion also may violate the due process rights of debtors in BA districts. *See Mosaic Mgmt.*, 71 F.4th at 1355 (Brasher, J., concurring).

Finally, although congressional intent is normally the touchstone for determining the remedy for this type of constitutional violation, *Morales-Santana*, 582 U.S. at 73-74, our choice of remedy is constrained by USA Sales' due process rights, which demand retrospective relief, as well as by our own jurisdictional limitations. *Mosaic Mgmt.*, 71 F.4th at 1348, 1352; *McKesson*, 496 U.S. at 31. So even if the 2020 Act granting prospective relief reflects congressional intent that such relief should be exclusive or that Congress would prefer clawbacks, that intent does not control our analysis. As our colleagues on the Eleventh Circuit explained:

> [L]egislative intent cannot overcome the requirements of due process. . . . [I]n the instant case, our result—requiring refunds, but recognizing future application of the fee increase, as mandated by Congress in the 2020 Act—implements as much of the congressional intent as due process permits.

*Mosaic Mgmt.*, 71 F.4th at 1352. In short, the UST cannot avoid providing refunds because the 2020 Act fixed the constitutional problem prospectively by raising fees in BA districts.

Accordingly, we hold that USA Sales is entitled to a refund of the unconstitutional fees it paid in excess of those it would have paid in a BA district from January 2018 to November 2019.[5]

---

[5] The UST briefly argues that any refund should not include excess fees paid from January to October 2018 because, during that time, the Judicial

**AFFIRMED.**

Conference had a standing order, which was inexplicably ignored, that fees in BA districts should match those in UST districts. As the bankruptcy court succinctly explained on remand from *Siegel*: "[T]he crux of the issue is not what the BA Districts did. It is what Congress did. Congress passed a statute that allowed for non-uniform fees. That unconstitutional statute . . . is what the Supreme Court identified as the source of the constitutional injury." *Circuit City*, 2022 WL 17722849, at \*5. Thus, the constitutional violation existed, and a refund is due, for the whole period with nonuniform statutory rates.